WESTCLIFF COMPANY, INCORPORATED, ET AL V.
EARLINE WALL

No. A-4411. Decided April 14, 1954.
Rehearing overruled May 9, 1954.
(267 S.W. 2d Series 544)

*Cal Estill, Lattimore & Lattimore* and *Hal Lattimore,* of Fort Worth and *Thomas M. French, Jr.,* of Grapevine, for petitioner.

The Court of Civil Appeals erred in holding that a landowner was responsible to a subsequent purchaser of a part of said land for statements made to another with reference to the future development of said property when the landowner did not know that the subsequent purchaser was even interested in purchasing a lot across the street; also in holding that a judgment based on said information should be affirmed because there was no verdict of the jury that landowner ever promised to do some act in the future, and under Article 4004 R.S. there must be such a verdict to support a judgment for actionable fraud. Hawkins v. Campbell, 226 S.W. 2d 891; Scott v. S. H. Kress & Co., 191 S.W. 714.

*Rawlings, Sayers, Scurlock & Eidson,* and *Nelson Scurlock,* all of Fort Worth, for respondent.

Persons who willfully make false representations is liable in exemplary damages under Article 4004, R.S. Williamson v. Patterson, 106 S.W. 2d 753; Rawdon v. Garvis, 227 S.W. 2d 261; Loma Vista Dev. Co. v. Johnson, 142 Texas 686, 180 S.W. 2d 922.

MR. JUSTICE SMITH delivered the opinion of the Court.

Respondent brought this suit against petitioners, J. E. Foster, Jr., and Westcliff Company, Inc., a corporation, for actual and exemplary damages, alleging that prior to November 3, 1947, F. & N. Corporation was the owner of Lot 2, in Block 6 of the Westcliff Addition to the City of Fort Worth, and that the Westcliff Company, Inc., a corporation, was the owner of Block 1 of the same subdivision; that Block 1 was situated north of and immediately across the street from Lot 2, Block 6; that she and her husband, Lewis D. Wall, Jr., were interested in purchasing Lot 2, Block 6, to be used and occupied as a home; that they knew that Westcliff Company, Inc., had sold Lot 2, Block 6 to the F. & N. Corporation, and that this lot, together with many others in the Addition, was to be developed for residential purposes. They further knew that petitioner, Westcliff Company, had reserved Block 1 for the purpose of developing it as a commercial or shopping center. The respondent further alleges that before the purchase of Lot 2, Block 6 on November 3, 1947, J. E. Foster, Jr., an active officer and stockholder of the Westcliff Company, Inc., represented to her husband, Lewis D. Wall, Jr., that "the portion of Block 1 directly north of Lot 2, Block 6, would be landscaped and beautified" and stated that "while a filling station might be placed on the block, it would not be located across from Lot 2 of Block 6, but would be set a considera-

ble distance back from the street and on another portion of the block." Respondent alleged that the representations were made by J. E. Foster to her husband, but the evidence shows that they were made to Judge Drew Clifton in the presence of Lewis D. Wall, Jr. The respondent further alleged that the representations were believed and relied upon and that she and her husband would not have purchased Lot 2, Block 6, had they known such representations so made were false, as they later learned; and that J. E. Foster had no intention of carrying out the development of Block 1 as represented. Petitioner, J. E. Foster, testified that he did not recall the alleged conversation, but that it was never his intention to landscape and beautify the portion of Block 1 immediately across and in front of Lot 2, Block 6, but, on the other hand, his plan was to construct commercial buildings on the block and lease to tenants and that the exact location would be determined by the lessee. Petitioners further contend that pursuant to such plan, the Texas Company leased the part of Block 1 located across the street and in front of Lot 2, Block 6, and that a service station was constructed thereon.

A jury, in answer to special issues, found that the representations attributed to petitioner, J. E. Foster, were in fact made, and that he had no intention of carrying out such representations at the time they were made, and that Lewis D. Wall, Jr., believed and "relied upon such statements or representations," and that such "statements and representations * * * served as a material inducement for Lewis D. Wall, Jr., to purchase the house and lot described as Lot 2, Block 6 of Westcliff Addition to the City of Fort Worth." Judgment was entered for the respondent, and on appeal to the Court of Civil Appeals for the Second Supreme Judicial District of Texas, the trial court's judgment was affirmed. 261 S.W. 2d 450.

The facts are fully stated in the opinion of the Court of Civil Appeals. We have referred to and, in this opinion, will only make reference to the pertinent facts bearing on the question for our decision.

Judge Drew Clifton testified that during the conversation with Mr. Foster a map or plat was exhibited and that Mr. Foster expressed an intention to beautify and landscape the property; that in conversation with Mr. Foster at the time the plat was exhibited, he said "Well, being a lawyer, and probably a little technical and careful about things, * * * this drawing, is it going to be placed on record, in the County Clerk's Office, as a map or plat or dedication, or anything?" Foster answered that it wasn't and

Judge Clifton asked: "Well, will it be convenants running with the deeds to these places you sell surrounding it?", to which Foster answered there would not, and Judge Clifton asked, "Well, what assurance would I have, if I purchased that, that you would carry through this plan that you showed me here today?" Foster answered, "You have my word." Foster made no promises to Lewis D. Wall, Jr., and did not know that Wall was interested in purchasing land in the subdivision.

Petitioners were not endeavoring to sell Lot 2, Block 6, at the time the representations were made by J. E. Foster, Jr., for the obvious reason they did not own the lot, and furthermore, they had no financial interest or other connection with the F. & N. Corporation, the grantor in the deed to respondent and her husband, Lewis D. Wall, Jr. The transaction, so far as Lot 2, Block 6 was concerned, was one solely between the owner of the lot and respondents.

∎ The petitioners contend that there is no evidence showing a promise upon which respondent could rely. Article 4004, Vernon's Annotated Civil Statutes of Texas, is penal in nature and must be strictly construed. Thompson v. American Power & Light Co., 192 Fed. 2nd 651. Section 1 of the Act reads: "Actionable fraud in this State with regard to transactions in real estate or in stock corporations or joint stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract * * *."

The undisputed evidence in this case is that the promises were made by Foster in an effort to influence Judge Clifton in the purchase of Lot 2, Block 6. There is no evidence in this record that Foster intended to influence Lewis D. Wall, Jr., in the purchase of the lot. The fact that he happened to be present and heard the promise to Clifton is not proof that it was the intention of Foster to influence the future action of Lewis D. Wall, Jr. "A person making a representation is only accountable for its truth or honesty to the very person or persons whom he seeks to influence; no one else has a right to rely on the representations and to allege its falsity as a wrong to him." Williamson v. Patterson, Tex. Civ. App., 106 S.W. 2d 753, writ dismissed. Lewis D. Wall, Jr., did not have the legal right to rely on the alleged false promise to Clifton. It cannot be said that Foster intended the promises to Clifton to serve as a material inducement and

thereby influence Wall to buy Lot 2, Block 6, when the evidence shows that Foster did not know that Wall was interested in purchasing property in the Westcliff Addition—much less purchasing Lot 2, Block 6, the identical property about which Judge Clifton was making inquiry.

The rule applicable to this case is well stated by Mr. Cooley in his work on Torts, page 493:

"No one has a right to accept and rely upon the representations of others but those to influence whose actions they were made. * * * When statements are made for the express purpose of influencing the action of another, it is to be assumed they are made deliberately and after due inquiry, and it is no hardship to hold the party making them to their truth. But he is morally accountable to no person whomsoever but the very person he seeks to influence, and whoever may overhear the statements, and go away and act upon them, can reasonably set no claim to having been defrauded if they prove false. Fraud implies a wrongful actor and one wrongfully acted upon; but in the case supposed there is no privity whatever. Therefore one may even be the person to whom the false representations are made, and yet be entitled to no remedy if they were made to him as agent for another, and to affect the action of the other, and were not intended to influence his own action."

See First State Life Co. v. Stroud, Tex. Civ. App., 120 S.W. 2d 491, no writ history.

Our disposition of the question herein discussed renders it unnecessary to consider the remaining points presented.

The judgments of the trial court and the Court of Civil Appeals are reversed, and judgment rendered for petitioners that respondent take nothing.

Opinion delivered April 14, 1954.

Rehearing overruled May 19, 1954.