**JEFMOR, INC. f/d/b/a Foster Mortgage Corporation, Appellant,**

v.

**CHICAGO TITLE INSURANCE COMPANY and Billie McCarley, Appellees.**

**No. 2–91–123–CV.**

Court of Appeals of Texas, Fort Worth.

Oct. 20, 1992.

S. Barcus Hunter, Hunter & Cameron, Fort Worth, for appellant.

Sloan B. Blair, Cantey & Hanger, Fort Worth, for appellee.

Before WEAVER, C.J., and FARRIS and LATTIMORE, JJ.

## OPINION

WEAVER, Chief Justice.

Appellant JEFMOR, INC. ("JEFMOR"), f/d/b/a Foster Mortgage Corporation ("Foster"), appeals from a take nothing summary judgment in favor of appellees, Chicago Title Insurance Company ("Chicago Title") and Billie McCarley ("McCarley"), who was the settlement agent for Chicago Title. We affirm.

At the time the facts of this case arose, Foster was in the business of originating loans to borrowers to finance the purchase of residential real property, and was also engaged in purchasing such loans originated by other lenders in what is known as the secondary mortgage market. JEFMOR, as successor to Foster, brought this action seeking to recover from Chicago Title and McCarley the proceeds which Foster had released to Amerifirst Mortgage Services, Inc. ("Amerifirst") when Foster purchased a mortgage (the "McGee loan") which was originated, but never funded, by Amerifirst.

The closing of the McGee loan was handled at Chicago Title by McCarley according to instructions from Amerifirst. Included in the closing documents prepared by McCarley was a settlement statement commonly known as the HUD–1, and which contained the following language over McCarley's signature:

> The Hud–1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

JEFMOR claims that in direct reliance upon this language, Foster wired the funds to Amerifirst's bank account for the purpose of purchasing the McGee loan from Amerifirst. The McGee loan was never funded by Amerifirst; it has gone out of

business and taken the funds advanced by Foster.

This action was brought against Chicago Title and McCarley based upon their alleged intentional, or in the alternative, negligent misrepresentation that the funds had been disbursed. In its sole point of error, appellant alleges that the trial court erred in granting the motion for summary judgment. The issue before us is whether, under the facts of this case, Foster had the legal right to rely on the HUD–1 settlement statement signed by McCarley and whether the title company and its settlement agent had a duty to use reasonable care in executing the HUD–1 settlement statement because the HUD–1 might be relied upon by foreseeable third parties who were not involved in the original transaction.

 In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); TEX. R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the nonmovant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Company*, 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Montgomery*, 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American*, 391 S.W.2d at 47. To establish entitle-

ment to judgment as a matter of law, the defendant must disprove one or more of the elements essential to the plaintiff's cause of action. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex. 1975).

Both appellant and appellees cite *Westcliff Co. v. Wall*, 153 Tex. 271, 267 S.W.2d 544 (1954) as the leading case on this issue; however, each applies it very differently to the controversy at bar. In *Westcliff*, an officer of the corporate landowner, Westcliff Company ("Westcliff"), made representations about certain property to a prospective buyer, Judge Clifton. *Id.* 267 S.W.2d at 545. The representations were made in the presence of Lewis D. Wall, Jr. ("Wall") who subsequently purchased property across the street which was not owned by Westcliff. *Id.* at 545–46. When the representations overheard by Wall were not implemented in the development of the properties, Wall sued Westcliff for fraud based on the alleged misrepresentations made by Westcliff to Judge Clifton in Wall's presence. *Id.* at 545. The Texas Supreme Court found that Wall did not have the legal right to rely on the representations made by Westcliff to Judge Clifton because there was no privity between Westcliff and Wall. *Id.* at 546. The Supreme Court held that "[a] person making a representation is only accountable for its truth or honesty to the very person or persons whom he seeks to influence; no one else has a right to rely on the representations [sic] and to allege its falsity as a wrong to him." *Id.* At the time the representations were made, Westcliff did not know that Wall was interested in purchasing nearby property, and did not intend that its statements to Judge Clifton would induce Wall to purchase any property. *Id.* Therefore, Westcliff owed no duty to Wall who had relied upon the representations made by Westcliff to another. *Id.*

 The material facts in the case before us are undisputed. The loan instructions given to McCarley by Amerifirst required that she return fully executed closing documents to Amerifirst for its review before funding could occur, and that all documents must be executed. The instruc-

tions specifically provided that "[f]unds will be disbursed only after the closed package in proper order is returned to our office for review." JEFMOR claims that McCarley's statement that "I have caused the funds to be disbursed in accordance with this [settlement] statement" was not required to be made by her and was a gratuitous assertion on her part. However, the record reflects that such language was contained on the HUD–1 settlement statement which Amerifirst sent to the title company with the loan instructions.

The closing documents were returned to Amerifirst by McCarley as she was instructed. The documents, including the HUD–1 settlement statement, were then delivered to Foster by Amerifirst. None of these documents was delivered to Foster by Chicago Title or McCarley. In fact, the undisputed summary judgment proof shows that McCarley was contacted by Foster after Foster had purchased the McGee note, and until that time McCarley did not know Foster was involved in any way in the transaction.

Using the *Westcliff* rationale, McCarley's legal duty regarding the truth of the statement that the funds had been disbursed extended no further than to Amerifirst, the party to whom the statement was made. Foster, an outsider to the original transaction, had no right to rely on the statement by McCarley to Amerifirst or to allege the statement's falsity as a wrong to Foster. *See Westcliff*, 267 S.W.2d at 546.

Part of JEFMOR's contention that Foster's damages in this case were foreseeable by Chicago Title and McCarley is apparently based on the asserted wide and accepted use of the HUD–1 settlement statement by title companies and others involved in a real estate sale. However, JEFMOR cites no authority in support of such argument, and the same is rejected by us under the circumstances of this case.

Appellant's sole point of error is overruled.

Judgment is affirmed.