**John KANON, Individually, and as Executor of the Estate of Terry Kanon, Deceased, Appellant,**

v.

**The METHODIST HOSPITAL, Appellee.**

No. 14–97–01358–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 2, 1999.

G. Wesley Urquhart, Houston, John C. Grazier, Seabrook, for appellant.

Catherine B. Smith, Lisa Lynne Turboff, H. Ronald Welsh, Houston, for appellee.

Panel consists of Justices YATES, FOWLER, and LEE.*

## O P I N I O N

FOWLER, Justice.

This is an appeal from a summary judgment granted in favor of The Methodist Hospital. John Kanon, individually, and as executor of the estate of Terry Kanon,[1] raises four issues on appeal. We affirm.

---

* Senior Justice Norman R. Lee sitting by assignment.

1. We will refer to John Kanon in both of his capacities simply as Kanon.

## Background

Kanon brought suit against appellee, the Methodist Hospital,[2] claiming his wife, Terry Kanon, now deceased, was injured by a device called a Proplast implant. The Proplast implant contains the substances "Proplast" and teflon FEP and is implanted to relieve temporomandibular joint ("TMJ") problems. Terry Kanon underwent surgery to receive a Vitek–Kent proplast implant on May 31, 1984; the implant totally replaced her temporomandibular joint. After Terry's death, Kanon substituted as the party and joined individually, asserting consortium claims.

Methodist filed a motion for summary judgment, arguing that most of Kanon's claims were barred by limitations. It pointed out that the evidence showed her awareness of the problem. First, Methodist asserted that, in September 1987, Terry Kanon was aware of the breakdown of plastic in the implants. Second, in December 1989, Terry's oral surgeon informed her that her tomograms showed a foreign body reaction to the implant. Third, in January 1990, Terry advised her family physician that the plastic in her implants was "breaking up." Fourth, on October 31, 1991, Terry filed a proof of claim in the bankruptcy of Vitek, the manufacturer of her joint prosthesis. Fifth, in January 1992, Terry requested a letter from a doctor for her "class action suit on Vitek implants." Finally, on September 23, 1992, Terry's implants were removed and replaced with Osteomed total joint replacements. In spite of these events that reflected some knowledge on her part, Terry Kanon did not file suit until November 18, 1994.

The trial court granted the motion for summary judgment in favor of Methodist.

---

2. Kanon also sued his wife's oral surgeon, Dr. Raymond Reid, AMI Hospitals of Texas, Ltd. d/b/a Park Plaza Hospital, and Osteomed. Kanon has appealed the summary judgment only as it concerns the Methodist Hospital.

## Standard of Review

A trial court should grant a motion for summary judgment if a movant disproves at least one essential element of a nonmovant's causes of action, or if the movant establishes all elements of an affirmative defense as a matter of law. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). In deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true, every reasonable inference must be indulged in favor of the nonmovant, and all doubts must be resolved in favor of the nonmovant. *Id.*

## Discovery Rule and Fraudulent Concealment

Kanon alleged that the discovery rule and fraudulent concealment tolled the two-year limitation period applicable to the negligence claim against Methodist. Methodist claimed in its motion for summary judgment that Terry knew the nature of her injury and the facts underlying it more than seven years, and clearly more than three years, before she filed suit.

 Generally, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury. *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex.1998). An exception to this rule occurs when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1994). Under the discovery rule, "a cause of action does not accrue until a plaintiff knows or, through the exercise of reasonable care and diligence, 'should have known of the wrongful act and resulting injury'." *Childs*, 974 S.W.2d at 37 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). The supreme court reasserted this rule that accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury, not when the plaintiff knew of the specific nature of each wrongful act that may have caused injury. *See KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 749 (Tex.1999).

 Like the discovery rule, proof of fraudulent concealment also tolls accrual of limitations. *See Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983); *Dougherty v. Gifford*, 826 S.W.2d 668, 673 (Tex.App.-Texarkana 1992, no writ). Where a defendant is under a duty to make disclosure, but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party either learns of its right of action or should have learned through the exercise of reasonable diligence. *Borderlon*, 661 S.W.2d at 908 (Tex.1983). The party asserting fraudulent concealment must raise it in response to the summary judgment motion and must offer summary judgment evidence raising a fact issue on each element of the fraudulent concealment claim. *KPMG Peat Marwick*, 988 S.W.2d at 749.

 Kanon claims that, due to a variety of misrepresentations, Terry did not discover Methodist's involvement in the manufacturing, development, and sale of proplast until October 1993. Kanon contends that Methodist made false representations through the sworn testimony of John Prewitt, Charles Homsy, and Richard Cheney.

Methodist argues that, even if the Kanons did not know of Methodist's involvement, they knew the nature of Terry's injury at least three years before they filed suit. Methodist contends limitations begin to run when the fact of injury is known, not when the responsible party is discovered. In support of this contention, Methodist cites *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343 (Tex.1992) and *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348 (Tex.1990). A panel of our court has held that limitations begin to run when the fact of injury is known, not when the plaintiff identifies

the alleged wrongdoer. *See Childs v. Haussecker,* 974 S.W.2d 31, 40 (Tex.1998); *Bayou Bend Towers Council of Co–Owners v. Manhattan Const. Co.,* 866 S.W.2d 740, 743 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

Among the facts Methodist cites as proof that Kanon's claims are barred is the filing by Terry Kanon of a proof of claim in the Vitek bankruptcy proceeding; she filed the proof of claim on October 31, 1991. The claim stated that it was filed "for damages caused by implant of temporomandibular joint replacement manufacture by Debtor [Vitek]." In a December 30, 1991 sworn statement, Terry Kanon specified her injuries for the bankruptcy court; they included muscle spasms and pain in both joints, lost teeth, inability to eat, and damages including lost services to her family (household duties, meal preparation, and yardwork). Mrs. Kanon also stated she had expended $20,270 in medical expenses since May 1984.

Methodist asserts that these filings establish that Kanon had actual knowledge of the nature of the injury and that she had grounds for a lawsuit. We agree. As early as October of 1991, Terry Kanon was clearly aware of an injury caused by the implant. This awareness caused the statute of limitations to begin running in October of 1991. *See Russell,* 841 S.W.2d at 344 n. 3; *Moreno,* 787 S.W.2d at 357. Because suit was filed more than two years after October 1991, appellant's claims are barred by limitations.

Appellants cite *Dougherty v. Gifford,* 826 S.W.2d 668 (Tex.App.-Texarkana 1992, no writ) and *Cherry v. Victoria Equipment and Supply, Inc.,* 645 S.W.2d 781 (Tex. 1983) for the proposition that, even if suit was filed outside the limitations period, Methodist's fraudulent concealment of its involvement estops application of limitations. In *Dougherty,* the court held that fraudulent concealment could estop a defendant from claiming limitations as a defense where the defendant had actual knowledge of involvement in a case, had a

duty to disclose this involvement, and a fixed purpose to conceal the involvement. *See* 826 S.W.2d at 673. The duty to disclose depends on the relationship between the plaintiff and defendant. *See id.* at 674. In *Dougherty,* the relationship between plaintiff and defendant was a physician/patient relationship, which was held to implicate a higher duty to disclose. *Id.* In *Cherry,* there was no relationship between the parties, but a defendant had denied his involvement under oath when deposed by the plaintiff. *Cherry,* 645 S.W.2d at 782. The court held that this deposition testimony raised an issue of fact as to fraudulent concealment that defeated summary judgment based on limitations. *Id.*

Methodist first contends it had no duty to disclose its involvement because there was no relationship between it and appellant giving rise to a duty. Even if this is true, which we believe it is, violation of a duty to disclose is not the only basis for fraudulent concealment. *See Cherry,* 645 S.W.2d at 782; *Santanna Nat. Gas Corp. v. Hamon Operating Co.,* 954 S.W.2d 885, 891 (Tex.App.-Austin 1997, writ denied). Affirmative misrepresentations can support a fraudulent concealment defense to limitations even in the absence of a duty to disclose. *See Santanna,* 954 S.W.2d at 891.

> Texas courts have long adhered to the view that fraud vitiates whatever it touches, and have consistently held that a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the limitations period. To reward a wrongdoer for his own fraudulent contrivance would make the statute a means of encouraging rather than preventing fraud.

*Id.* (quoting *Borderlon v. Peck,* 661 S.W.2d 907 (Tex.1983)). However, even if there is a finding of fraudulent concealment, it does not extend limitations indefinitely. *Santanna,* 954 S.W.2d at 891. Instead, it

merely defers the statute of limitations until the plaintiff learns or in the exercise of reasonable diligence should have learned of the facts that give rise to its cause of action. *Id.*

In the summary judgment proceeding below, Kanon introduced evidence from other lawsuits against Vitek in an attempt to show that statements Methodist made misled Terry Kanon. This evidence included a September 7, 1992 affidavit of Dr. Homsy (prepared by Methodist's attorneys), a November 12, 1992 affidavit of Dr. Richard Cheney (general counsel of Methodist), the September 12, 1992 deposition testimony of John Prewitt, the 1968 contract between Vitek and Methodist, and the November 21, 1973 deposition testimony of Dr. Homsey. Kanon claims that, through these witnesses, Methodist made misleading and false statements about its involvement in the Vitek implant device. But, Kanon's argument has two problems.

First, as Methodist argues, even if any of these documents contain false statements, no false statements were made under oath to Terry Kanon. Indeed, those cases that have allowed a fraudulent concealment claim based on misrepresentations, did so because misrepresentations were made directly to the plaintiff. *See Cherry,* 645 S.W.2d at 782; *Santanna,* 954 S.W.2d at 891. In the present. case, the alleged misrepresentations were not made to Terry Kanon; they were made in another lawsuit in which Terry Kanon was not a party.

Second, some of the evidence Kanon points to as misleading—for example, deposition testimony—also contains evidence clearly showing a relationship between Vitek and Methodist. When the very record that contains alleged misstatements also reveals the falsity of these statements, we are unwilling to let a party rely on diligence to escape the statute of limitations. Accordingly, we hold that Kanon did not meet his burden of raising a fact issue on each element of fraudulent concealment.

Because Kanon did not create a fact issue on the fraudulent concealment claim, the record conclusively establishes that the cause of action accrued more than two years before suit was filed. Thus, the trial court properly granted summary judgment on Kanon's negligence claims.

In his fourth issue, Kanon contends the trial court erred in granting summary judgment on the DTPA claims because the statute of limitations had not run before Kanon filed suit.

 Under the DTPA, the statute of limitations begins to run when the deceptive act or practice occurs or, if the deception is concealed, when the plaintiff, in the exercise of reasonable diligence, should have discovered the occurrence of the misrepresentation made the basis of the complaint. *Southwestern Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 492 (Tex. App.-Houston [1st Dist.] 1992, writ denied). The date the plaintiff discovered or should have discovered the misrepresentation is a question of fact. *Id.*

 Kanon contends Methodist was not entitled to summary judgment unless it showed when Terry Kanon discovered or should have discovered Methodist's involvement in the production and marketing of proplast implants. Aside from any alleged deception by Methodist, the record showed Terry Kanon actually knew of her injury in October 1991 when she filed her proof of claim in the Vitek bankruptcy proceeding. All that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible. *Bayou Bend Towers Council of Co–Owners v. Manhattan Const. Co.,* 866 S.W.2d 740, 743 (Tex.App.-Houston [14th Dist.] 1993, writ denied). Even if appellant did not discover Methodist's involvement until 1993, as he claims, Terry Kanon discovered the injury two years before. Appellant was under a duty to undertake further inquiry to discover the nature of the dam-

age and the parties responsible. *See id.* at 744. Accordingly, the trial court properly granted summary judgment in favor of Methodist on the negligence and DTPA claims.

## Privilege Objections

Appellant next contends the trial court committed reversible error in sustaining privilege objections during the deposition of Barbara Radnofsky. During this deposition, appellant's counsel asked Radnofsky about her knowledge of the truth or falsity of statements contained in Dr. Charles Homsy's affidavit of September 7, 1992. At the time the affidavit was drafted, Radnofsky represented Methodist, not Homsy. Thus, appellant asserts that a privilege objection was improper. Additionally, appellant contends Methodist waived any claim of privilege by using it offensively rather than defensively.

Methodist claims the trial court properly sustained the privilege objections. Alternatively, Methodist maintains that the sustaining of those objections did not affect Methodist's entitlement to summary judgment because Radnofsky's alleged knowledge of the truth or falsity of the statements in Homsy's affidavit would not create a fact issue with regard to the appellant's defense of fraudulent concealment.

■ Our ruling on the first point of error is determinative of this point. Even if the statements in Homsy's affidavits were false and Methodist's attorney perpetuated this false testimony, this would not change our holding on the fraudulent concealment claim. First, the case law allows a claim of fraudulent concealment only when the party making the misrepresentations either made the misrepresentation to appellant or owed a duty to appellant to disclose the information. *See Dougherty*, 826 S.W.2d at 673; *Santanna*, 954 S.W.2d at 891. Second, as we held in the previous section, the record from the prior lawsuit contained information about Methodist's involvement with the development of the proplast implant.

In addition, Kanon is unable to raise a fact issue as to all elements of the "offensive use" waiver. One element of the "offensive use" doctrine is that the information "would in all probability be outcome determinative." *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex.1993). The truth or falsity of Homsy's testimony and any involvement of Methodist's attorney would not be outcome determinative on the claim of fraudulent concealment because the record of the prior suit containing this allegedly false affidavit also contained information showing Methodist's involvement.

## Fraudulent Misrepresentations

Finally, Kanon claims the trial court erred in finding there were no fact issues regarding his claim of fraudulent misrepresentations. Kanon contends he pled a claim of fraudulent misrepresentation in addition to the claim of fraudulent concealment and that Methodist did not conclusively negate any element of common law fraud in its summary judgment motion.

■ Kanon pled that Methodist had knowledge of material facts including the risks, dangers, inadequate testing, and manufacturing deficiencies associated with the Vitek products at issue in this case. Kanon contended that Methodist failed to disclose these facts to the members of the medical community and to their patients, such as Terry Kanon. Kanon pled that, if these facts had been disclosed to Terry Kanon, she would not have had the device implanted in her TMJ and would not have suffered injuries. Additionally, Kanon asserts that Methodist affirmatively misrepresented the quantity and quality of testing that had been performed on the proplast material.

Methodist disagreed that Kanon pled facts that established a fraud claim. In its motion for summary judgment, Methodist offered two arguments to defeat Kanon's

fraud claim: (1) it was simply a fraudulent concealment claim offered to avoid the statute of limitations bar; and (2) no material misrepresentation was made to Terry Kanon.

We disagree that Kanon's fraud claim was a reiteration of the fraudulent concealment claim. As we noted above, Kanon pled that Methodist made affirmative misrepresentations that adequate testing was or would be performed, and that Methodist made affirmative misrepresentations to the medical community, including appellant's oral surgeon, about the adequacy of testing. He claims that these misrepresentations, caused the Kanon's damages. These claims do not allege a concealment of an action; they allege a misrepresentation.

■ Thus, we agree with Kanon that he has pled a cause of action for fraud. However, we do not agree that Methodist can be liable for intentional misrepresentation. It cannot be liable, as it points out, because it did not misrepresent a fact directly to Terry Kanon; in other words, Methodist claims that there was no privity.

■ We have diligently searched Texas case law and have been unable to locate any cases in which a person was held liable for fraud or intentional misrepresentation when there was no privity between the plaintiff and the defendant. For a misrepresentation to be actionable, the maker must intend to influence the very person to whom he makes the representation. *See Westcliff Co. v. Wall*, 153 Tex. 271, 267 S.W.2d 544, 546 (1954); *Jefmor, Inc. v. Chicago Title Ins. Co.*, 839 S.W.2d 161, 163–64 (Tex.App.—Fort Worth 1992, no writ). Here, the representation regarding the quality of the testing and the quality of the product were, by appellant's own admissions, made to the medical community at large; they were not made specifically to Kanon with the intent that she rely on them. In short, we agree that there was no privity between Methodist and Kanon.

■ This same problem was present in *Westcliff. See Westcliff*, 153 Tex. 271, 267 S.W.2d at 545–46. There, an officer of the corporate landowner Westcliff, made a representation to a prospective buyer— Judge Clifton—about plans Westcliff had in developing a subdivision. *See id* at 545. Another individual, Lewis Wall, was with Judge Clifton when the representations were made, but Wall was not then a prospective buyer. *See id.* However, later, Wall relied on the representations, and bought property in the subdivision. *See id.* When the proposed developments were not implemented, Wall sued Westcliff for intentional misrepresentation. *See id.* The Texas Supreme Court held that Wall did not have a legal right to rely on the representations made by Westcliff to Judge Clifton because there was no privity between Westcliff and Wall. *See id* at 545. In reaching this conclusion, the Supreme Court held that a "person making a representation is only accountable for its truth or honesty to the very person or persons whom he seeks to influence; no one else has a right to rely on the representations [sic] and to allege its falsity as a wrong to him." *Id.* This still is the rule in an intentional misrepresentation cause of action. *See Jefmor, Inc.*, 839 S.W.2d at 163–64.

Appellant cites *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231 (Tex.App.-Dallas 1985, writ ref'd n.r.e.) for the proposition that direct reliance on misrepresentations is not required. In *Cook*, a homeowner sued a surveyor for negligent misrepresentation. *See id.* at 233. The surveyor conceded its survey was erroneous, but claimed it was not liable because, absent privity of contract, it owed no duty of care to the homeowner. *See id.* The court disagreed, holding that the surveyor owed a duty of care to the homeowner because the transaction was indirectly intended to benefit the homeowner and harm was reasonably foreseeable. *See id.* at 235. However, *Cook* is a negligent misrepresentation case; it does not involve an intentional misrepresentation.

In sum, Kanon's fraud cause of action fails because Methodist did not make a misrepresentation to Terry Kanon.

### Conclusion

Accordingly, we overrule Kanon's last issue and affirm the trial court judgment.