Lucas COLE and Alberta
Cole, Appellants

v.

Larry C. JOHNSON and Rhea
F. Johnson, Appellees.

No. 2–04–161–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 3, 2005.

G. David Davis, Arlington, for Appellant.

Shannon, Gracey, Ratliff, & Miller, L.L.P., William P. Remington, Arlington, for Appellee.

Panel B: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

## OPINION

BOB MCCOY, Justice.

### I. Introduction

This case involves the nondisclosure of certain information regarding the foundation of a home purchased by Lucas Cole and allegedly also by his wife, Alberta Cole (collectively, "the Coles"), from Larry C. Johnson and Rhea F. Johnson (collectively, "the Johnsons"). In four points, the Coles assert error on the part of the trial court in granting summary judgment on behalf of, and awarding attorney's fees to, the Johnsons, resulting in the dismissal of the Coles' suit.

### II. Factual Background

This is a case of a faulty foundation's failure. On October 15, 2000, Lucas Cole entered into a contract with the Johnsons to purchase their home at 3302 Tranquility Drive, Arlington, Tarrant County, Texas.

On November 17, 2000, the sale of the house was completed. Among the closing papers was a two-page notarized document signed by Lucas Cole on November 17, 2000, which indicated that the sale price was being lowered two thousand dollars in lieu of foundation repairs, that the Johnsons would be held harmless for any present or future repairs, and that the property was being purchased in an "as-is" condition. For reasons that are not indicated in the record, Alberta Cole, the wife of Lucas Cole, was not named as a party and did not sign the Residential Sales Contract, the Acknowledgment of Receipt of the Sellers' Disclosure Notice, or the November 17, 2000 notarized document, although she was named as a "buyer" in the notarized document.

In connection with the purchase of the home, numerous other documents were executed or provided by the Johnsons, including (1) a fifteen-page concrete and soils testing report dated May 11, 1993 from the Hooper Group, Inc. to Koos and Associates, Inc., (2) a ten-page foundation investigation dated May 28, 1993 submitted to United States Automobile Association Insurance ("USAA") by Koos Engineering and Associates ("Koos"), (3) a four-page report from McHale Consulting Engineering ("McHale") to Ram Jack Foundation Repair ("Ram Jack") dated March 1, 1995, (4) core drilling and testing reports from Don Illingworth to Terracon Consultants, Inc. ("Terracon") dated February 22, 1996, (5) a ten-page report with attachments from to Don Illingworth and Associates, Inc. dated March 1, 1996 concerning sub-surface exploration and laboratory testing, (6) several pages of bid estimates and a contract for work between Extra Mile Construction Company and the Johnsons dated June 17, 1996, (7) other documents relating to bid estimates and pier placements by Ram Jack, (8) a foundation report summary running from 1993 to 2000, and (9) other miscellaneous documents related to the foundation and work thereon, all totaling fifty-five pages.

These documents revealed that USSA and Koos prepared a foundation and soil study concerning the property in 1993 and, as a result, Ram Jack installed twelve piers to repair the foundation. In 1995, McHale Engineering did another foundation and soils study for Ram Jack resulting in the application of mudjacking to the center of the home. In 1996, Terracon prepared a soils study for the homeowner to ascertain the type of foundation that would be needed if an additional room were added to the home. Also in 1996, work was performed on the drainage along the west and the south sides of the house by Extra Mile Construction. In 2000, two additional piers were installed, the Ram Jack piers were adjusted, and brick masonry was repaired by Extra Mile Construction.

The disclosure statement, to which the fifty-five pages of documentation was attached, indicated that the foundation and drainage had been inspected four times by Koos, Ram Jack, McHale, and Terracon; that the foundation had been repaired with the explanation of "see report"; that there had been house settling and soil movement with the explanation of "see reports" for the house settling; that repairs had been made to the foundation of the property since its original construction; that the seller had obtained a written report on the condition of the foundation, which was attached to the disclosure statement; that the seller had obtained a written report about drainage; that repairs had been made to the drainage of the property since its original construction; that the owner was not aware of any undisclosed defective condition; that the owner was unaware of any current defective condition to the drainage; and that there was no builder's

warranty or other non-manufacturer's warranty on the property.

After the closing on the home, during a telephone conversation between Rhea Johnson and Alberta Cole, Rhea mentioned to Alberta that the Ram Jack foundation work had failed, that Ram Jack had refunded their fee to the Johnsons, and that the Ram Jack warranty had been released in connection with the refund.

## III. Procedural Background

Subsequent to the conversation between Alberta and Rhea, the Coles filed suit against the Johnsons and others alleging breach of contract, violation of the DTPA, negligent misrepresentation, common law fraud, statutory fraud in a real estate transaction, and negligence, all based on the Rhea/Alberta telephone conversation. They specifically alleged that the Johnsons withheld substantial information concerning recommendations for repairs that they had elected not to undertake and the resulting concealed, unrepaired foundation defect. They prayed for economic damages, mental anguish, "additional damages," prejudgment interest, attorney's fees, and costs of suit. The Johnsons answered with a general denial, asserted affirmative defenses, and requested attorney's fees.

On March 19, 2004, a hearing was heard on a "traditional" summary judgment motion filed by the Johnsons and Ebby Halliday Real Estate Inc., d/b/a Ebby Halliday. As a result of the hearing, certain objections to the Coles' summary judgment response and evidence were denied in part and granted in part, summary judgment was granted to the Johnsons, and attorney's fees and costs were awarded to the Johnsons. The summary judgment signed by the trial court concludes with, "This judgment finally disposes of all claims and all parties and is appealable." Therefore,

it is a final judgment subject to appeal. *See Lehmann v. Har-Con Co.*, 39 S.W.3d 191, 206 (Tex.2001). The trial court did not specify the reasons for its grant of summary judgment. This appeal followed.

## IV. Standard of Review

 In a "traditional" summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *S.W. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *S.W. Elec. Power Co.,* 73 S.W.3d at 215; *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47. In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin,* 589 S.W.2d at 678.

■ A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 803 (Tex.1999). The defendant as movant must present summary judgment evidence that negates an element of the plaintiff's claim. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Id.* A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

On appeal, the first three points raised by the Coles address possible reasons for the trial court's granting of the summary judgment and assigns error to each. Specifically, point number one is error assigned by both Lucas and Alberta Cole, point number two is error assigned by Lucas Cole, and point number three is error assigned by Alberta Cole. The Coles' fourth point concerns the awarding of attorney's fees to the Johnsons because they prevailed at the trial court level. This point is dependent on our determination of their first three points. We will affirm.

## V. Points on Appeal

### A. Disclosures

■ In their first point, the Coles assert that the trial court erred if it granted summary judgment to the Johnsons based on the finding that the Johnsons were absolved of any further duty to disclose additional information regarding the Ram Jack repair work above and beyond what had been disclosed prior to the sale of the property. As previously stated, all the Coles' causes of action are based on the Rhea/Alberta telephone conversation and the alleged omission of information provided to the Coles regarding the failure of the Ram Jack pier work. Specifically, they complain that "the 1995 foundation repair by of [sic] Ram Jack's 1993 foundation work had failed and resulted in a refund to them [the Johnsons] of the money paid to Ram Jack for the 1993 job and cancellation of a warranty it had extended to the Johnsons for that work," which was not disclosed to them. The Coles, citing *SmithKline Beecham Corporation v. Doe,* 903 S.W.2d 347, 353 (Tex.1995), *Hoggett v. Brown,* 971 S.W.2d 472, 487 (Tex.App.-Houston [14th Dist.] 1997, pet. denied), and *Ralston Purina Company v. McKendrick,* 850 S.W.2d 629, 636 (Tex.App.-San Antonio 1993, writ denied), assert that the Johnsons breached "a general duty to disclose information in a transaction [that] is not absolved when a party makes a partial disclosure that, although true, conveys a false impression." The Coles assert that this omission denied them the opportunity to evaluate the information which should have been disclosed to them. However, the Coles ignore the final four words of their own argument, that is, that a partial disclosure may not absolve the disclosing party if the partially disclosed information *conveys a false impression.* Moreover, a seller of a house is charged only with disclosing such material facts as to put a buyer exercising reasonable diligence on notice of the condition of the house. *Pfeif-*

*fer v. Ebby Halliday Real Estate, Inc.*, 747 S.W.2d 887, 890 (Tex.App.-Dallas 1988, no writ). The Coles were aware there was no foundation warranty for the premises. They were aware that the property had an extensive history of foundation problems and foundation work. They were aware that foundation and drainage repairs had been made following the Ram Jack foundation work. They were aware that the Ram Jack foundation work had not cured the foundation problems because the foundation had continued to move and had to be repaired following that work. Specifically, the McHale Engineering report, which was prepared after Ram Jack installed twelve piers in 1993 and after further attempted repairs in 1995, indicated that

> some of the pier tops were exposed and the piers appeared to be loose. This is a condition that occurs when the foundation heaves or rises. . . . The residence appears to be experiencing foundation movement around the perimeter of the residence. . . . [This] consists primarily of cracked masonry, out of plumb windows and deflection of the frieze board at the top of the wall.

The report further finds evidence of sheetrock cracking throughout the residence in the walls and in the ceilings and slab cracks in the entry tile and throughout the garage. The report opines that

> [the] residence is experiencing [heaving]. . . . This foundation heave appears to have occurred since the residence was underpinned. . . . The elevation differentials in this residence are significant. . . . The excess moisture below this residence may have created considerable instability in the subgrade soil. As the subgrade soils dry over the next few years mud jacking of the interior slab may have to be repeated.

It is obvious, even to a layman, that the foundation work performed by Ram Jack had not corrected all the problems with the property's foundation, that these problems were ongoing at the time of the McHale report, and that further problems might occur in the future. The disclosures by the Johnsons did not convey a false impression and assuredly would have put a buyer using reasonable diligence on notice as to the residence's condition. This point is overruled.

## B. "As-is" Condition

■ In their second point, the Coles assert that the trial court erred if it granted summary judgment to the Johnsons and against Lucas Cole based on his notarized signing of the November 17, 2000 statement. That document, signed only by Lucas Cole, states as follows:

> We, the undersigned buyers hereby except [sic] the above referenced property in its present condition. We are in agreement to lower the sales price from $136,000 to $134,000 in lieu of foundation repairs. We agree to hold Larry C. Johnson and Rhea Ann Johnson, Ebby Halliday, Patt Klemmer, and Hexter–Fair Title Company harmless of any present or future repair. We are buying the property in as is condition.

There is one page of briefing by the Coles on this point. The Coles assert that no language in the statement waives or releases claims against the Johnsons, and they appear to assert that fraud, presumably on the part of the Johnsons, would abrogate any reliance that could be placed on the document, citing case law for the general provision that fraud vitiates whatever it touches. The Coles do not, however, favor this court with an explanation of what type of fraud they are referring to, what elements constitute the variety of fraud they are addressing, or any citations to the record for the factual basis of whatever fraud they are alleging. While we

agree with the general statement contained in the cases cited by the Coles, such as *Kanon v. Methodist Hospital*, 9 S.W.3d 365, 369 (Tex.App.-Houston [14th Dist.] 1999, no pet.), wherein the court held that fraud could abrogate the affirmative defense of the statute of limitations (which is not involved here), without assertions of facts supporting whatever "fraud" is alleged or citations to the record confirming those facts, this case law is of no help to the Coles. Further, and contrary to the position of the Coles, a hold harmless agreement such as we have here is synonymous with a release, and it relieves the released party of responsibility. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993).

With regard to the acceptance of the property "as-is," the Johnsons asserted this as an affirmative defense giving rise to "waiver, estoppel and release." As pointed out by the Johnsons, our supreme court has held that in general an "as-is" clause will defeat the element of causation in DTPA, fraud, and negligence claims. *Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex.1995). The enforceability of such a clause depends on the totality of the circumstances surrounding such an agreement, including whether the clause is an important part of the basis of the bargain as opposed to just boilerplate and whether the parties are in relatively equal bargaining positions. *Id.* at 162. In this matter, the "as-is" agreement is obviously a separately negotiated agreement with consideration given that is between equal individuals as buyer and seller. That being said, when an "as-is" agreement is executed, the buyer agrees to make his own appraisal of the bargain and accept the risk associated therewith, whereas the seller gives no express or implied guarantees regarding the value or the condition of the property and the buyer relies on his own determination of the condition and the value of the purchase. *Id.* at 161. As such, absent fraud, which has not been shown here, the agreement is enforceable as previously discussed. *Smith v. Levine*, 911 S.W.2d 427, 431–32 (Tex.App.-San Antonio 1995, writ denied). Therefore, no fraud having been shown and the "as-is" agreement being an enforceable one, point number two is overruled.

## C. Contracting Parties

In their third point, the Coles argue that if the trial court denied summary judgment to Alberta Cole because she was not a party to the contract, the court was in error. The Coles argue that although she did not sign the contract for the purchase of the house, "she shared a practical and property interest with her husband in its acquisition." No further description, let alone case law, is provided to this court describing what sort of interest this purports to be. The Coles also assert that she had standing to bring a DTPA claim, if no others. Alberta Cole could have standing under the DTPA if she established that the primary purpose for the acquisition was for her benefit. *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812, 815 (Tex.1997). There is no evidence, nor argument, nor citation to the record that this was in fact the case, let alone what section of the DTPA was alleged to have been violated. The Coles' third point is overruled.

## D. Attorney's Fees

In their fourth point, the Coles assert that the Johnsons would not be entitled to attorney's fees awarded by the trial court if the Coles were to prevail in this appeal. As the Coles did not prevail in this appeal as previously discussed, this point is likewise overruled.

## VI. Conclusion

Having overruled all the Coles' points, the judgment of the trial court is affirmed.