NUMBER 13-99-587-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


CHERUBINO VALSANGIACOMO
, Appellant,


v.



AMERICANA JUICE IMPORT, INC.
, Appellee.

___________________________________________________________________


On appeal from the 275th District Court


of Hidalgo County, Texas.


____________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Rodriguez

Opinion by Justice Rodriguez



 This is an appeal from the denial of a special appearance. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2000). We
reverse and dismiss the cause for lack of personal jurisdiction.

 Americana Juice Import (Americana) sued Cherubino
Valsangiacomo, C.V. (Cherubino) and Texas State Bank(1) in a Texas
district court, seeking damages for breach of contract and fraud. 
Americana also sought injunctive relief against Texas State Bank to
prevent it from paying on a letter of credit. On the same day the trial
court held a hearing(2) on the temporary injunction,(3) Cherubino filed a
special appearance. The trial court granted the injunction and
subsequently denied the special appearance. By two issues, Cherubino
challenges the trial court's denial of the special appearance and its
failure to file findings of fact and conclusions of law.

 Americana is a Texas corporation which imports juice, with its
principal place of business in Pharr, Texas. Cherubino is a business
located in Spain which produces, among other things, grape juice
concentrate. The underlying dispute involves an agreement between
Cherubino and Americana, in which Americana was to purchase a large
quantity of grape juice concentrate from Cherubino. In order to
purchase the juice, Americana obtained a letter of credit from Texas
State Bank with Cherubino named as the beneficiary. Cherubino was
to receive payment under this letter upon presentment of various
documents. The grape juice concentrate was shipped, and Americana
received the juice, but did not find the juice acceptable and rejected the
shipment. Cherubino presented the necessary documents to Texas
State Bank, which in turn, paid Cherubino thirty percent of the value of
the letter of credit as provided in the letter.

 In its first issue, Cherubino contends the trial court erred in failing
to file findings of fact and conclusions of law. Rule 297 of the Texas
Rules of Civil Procedure requires a trial court to file findings of fact and
conclusions of law within twenty days of a timely request. Tex. R. Civ.
P. 297. The rule also requires the requesting party to file a "Notice of
Past Due Findings of Fact and Conclusions of Law" within thirty days
after filing the original request if the trial court does not timely make
findings and conclusions. Id. An appellant's failure to file this reminder
waives "the right to complain on appeal of any error related to the trial
court's failure to make a finding or conclusion." Salinas v. Beaudrie,
960 S.W.2d 314, 317 (Tex. App.--Corpus Christi 1997, no pet.); Pierson
v. GFH Financial Services Corp., 829 S.W.2d 311, 314 (Tex.
App.­Austin 1992, no writ). 

 Here, the record shows the trial court failed to submit findings and
conclusions after Cherubino requested them. However, the record does
not indicate Cherubino filed a "Notice of Past Due Findings of Fact and
Conclusions of Law." Thus, it has waived any complaint regarding the
trial court's failure to file findings of fact and conclusions of law. 
Cherubino's first issue is overruled. 

 By its second issue, Cherubino asserts the trial court erred in
denying its special appearance because the evidence conclusively
establishes it was not subject to personal jurisdiction in Texas. 

 In Texas, a party may contest personal jurisdiction by filing a
special appearance. Tex. R. Civ. P. 120a(1). In Happy Indus. v.
American Specialties, 983 S.W.2d 844, 847 (Tex. App.­Corpus Christi
1998, pet. dism'd w.o.j.), this Court articulated the standard for
reviewing a trial court's denial of a special appearance:

 The standard of review to determine the
appropriateness of the trial court's resolution of
those facts is an ordinary sufficiency of the
evidence review. . . . The scope of that review
includes all evidence in the record. . . . If a
special appearance is based on undisputed or
otherwise established facts an appellate court
shall conduct a de novo review of the trial court's
order granting a special appearance. [However,]
in applying the jurisdictional formula to a
particular case, the facts must be carefully
weighed and mechanical application of any test
. . . must be avoided.


Happy, 983 S.W.2d at 847 (citations and quotations omitted). 

 In a case where the court has not filed findings or conclusions, all
questions of fact will be presumed and found in support of the
judgment. Magnolia Gas Co. & MKP v. Knight Equip. & Mfg. Corp., 994
S.W.2d 684, 690 (Tex. App.­San Antonio 1998, no pet.); Pierson, 829
S.W.2d at 314. Because the appellate record includes a reporter's
record, however, these findings are not conclusive on appeal. Magnolia
Gas Co., 994 S.W.2d at 690 (citing Zac Smith & Co. v. Otis Elevator Co.,
734 S.W.2d 662, 666 (Tex. 1987)). 

 On appeal from a special appearance, we review all evidence in
the record to determine if the nonresident defendant negated all
possible grounds for personal jurisdiction. Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 203 (Tex. 1985); N803RA, Inc. v. Hammer,
11 S.W.3d 363, 366 (Tex. App.­Houston [1st. Dist.] 2000, no pet.). The
plaintiff has the initial burden to plead sufficient allegations to show
jurisdiction in Texas. McKanna v. Edgar, 388 S.W.2d 927, 930 (Tex.
1965); M.G.M. Grand Hotel, Inc. v. Castro, 8 S.W.3d 403, 408 n.2 (Tex.
App.--Corpus Christi 1999, no pet.). Where the plaintiff fails to make
such jurisdictional allegations, the defendant can carry its burden to
defeat all bases of personal jurisdiction simply by presenting evidence
that it is a nonresident. M.G.M. Grand, 8 S.W.3d at 408 n.2. Once the
defendant has produced credible evidence negating all bases of
jurisdiction, the plaintiff bears the ultimate burden to establish that the
Texas court has personal jurisdiction over the defendant as a matter of
law. Id.

 The test for whether a Texas court may exercise personal
jurisdiction over a nonresident defendant is whether the defendant has
some minimum, purposeful contacts with the state, and the exercise of
jurisdiction will not offend traditional notions of fair play and substantial
justice. Dawson-Austin v. Austin, 968 S.W.2d 319, 326 (Tex. 1998);
CSR, Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996); see Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984);
International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Tex.
Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). We focus on the
defendant's activities and expectations in the forum state. Magnolia
Gas Co., 994 S.W.2d at 690. 

 A nonresident's contacts with a state can give rise to either
general or specific jurisdiction. J & J Marine, Inc. v. LE, 982 S.W.2d
918, 923 (Tex. App.­Corpus Christi 1998, no pet.). Americana argues
Cherubino's contacts with Texas were sufficient to establish both. 

 General jurisdiction is present when a defendant's contacts in the
state are so continuous and systematic that the state may exercise
personal jurisdiction over the defendant even if the cause of action did
not arise from or relate to activities conducted within the forum state. 
CSR, 925 S.W.2d at 595; Happy, 983 S.W.2d at 847. General
jurisdiction requires a showing the defendant conducted substantial
activities within the forum, a more demanding minimum contacts
analysis than for specific jurisdiction. CSR, 925 S.W.2d at 595; Happy,
983 S.W.2d at 847. 

 In support of its position that Cherubino maintained ongoing,
systematic contacts with Texas, Americana relies on evidence that
Cherubino sells wine in the United States and that Americana was able
to acquire Cherubino wine in Texas.

 Sheila Jacaman of Americana, who is able to speak, read, and
write in Spanish, testified as to the contents of a Spanish article about
Cherubino. According to Jacaman, the article quoted Arnolodo
Valsangiacomo, president of Cherubino, as stating that Cherubino sells
wine to numerous countries, including the United States. Jacaman also
testified that Marta Valsangiacomo, who works for Cherubino, told her
Cherubino was going to put on a wine exposition at a trade show in
Miami, Florida. Americana attached a document to its response to the
special appearance, which indicated Americana purchased a case of
Cherubino wine from a liquor store in McAllen, Texas. According to the
document, the product was obtained by Glazer's, a marketer of wine
and liquor, in Dallas, Texas. Following this document was a facsimilie
cover sheet from Bill Rich of Glazer's to Jacaman with a note to
Jacaman that the wine was obtained from AV Imports in New Jersey.

 In order for a defendant to have minimum contacts with a state,
it must purposefully avail itself of the privileges and benefits of
conducting business in Texas. CSR, 925 S.W.2d at 594. Evidence that
Cherubino sold wine into the United States does not establish
purposeful availment of the Texas market; neither does Americana's
obtaining Cherubino wine from a Texas liquor store, which had to order
the wine from a New Jersey importer, show that Cherubino
purposefully availed itself of the Texas market. 

 Arnoldo Valsangiacomo stated by affidavit that Cherubino is a
Spanish company and has no offices in Texas. Cherubino has no
employees or officers in Texas and does not advertise in Texas. We
conclude Cherubino does not have systematic or continuous contacts
with Texas so as to give Texas courts general jurisdiction over
Cherubino.

 Because we cannot sustain the trial court's ruling on the basis of
general jurisdiction, we turn to specific jurisdiction. Specific jurisdiction
is established if the defendant's alleged liability arises from or is related
to an activity conducted within the state. Castro, 8 S.W.3d at 409
(citing CSR, 925 S.W.2d at 595)). 

 In this case, Americana asserts there was specific jurisdiction
based on the existence of a contract with a Texas resident,
correspondence sent into Texas, the juice sent into Texas, partial
performance of the contract in Texas, and the commission of fraud by
Cherubino with reliance by Americana in Texas. 

 Cherubino maintains it did not send the alleged non-conforming
juice into Texas; rather, it delivered the juice to Americana's agent at its
factory in Spain pursuant to a provision in the contract. The evidence
shows the parties agreed to an "ex factory" clause, meaning Americana
assumed responsibility of the product at Cherubino's factory in Spain. 
Americana counters that the bill of lading names Cherubino as the
shipper and specifies Houston, Texas as the point of discharge. 
Jacaman testified about who shipped the non-conforming juice to
Texas during the hearings on the temporary injunction and on the
special appearance. During the special appearance hearing, Jacaman
reiterated what was indicated on the bill of lading­Cherubino was the
shipper and Houston was the port of destination. During her testimony
at the temporary injunction hearing, however, Jacaman testified
Americana was responsible for transporting the juice from Spain to
Texas, and did so. Thus, the evidence establishes Cherubino did not
ship the alleged non-conforming juice into Texas, but merely delivered
it to Americana's agent at its factory in Spain. Nonetheless, the
evidence shows Cherubino sent Americana samples of juice into Texas. 
Jacaman also testified that she told Valsangiacomo that the juice was
going to Texas, would be blended there, and shipped throughout the
United States. 

 Thus, we must consider whether the shipping of samples of juice
into Texas as well as the knowledge that the alleged non-conforming
juice was bound for Texas is sufficient to establish specific jurisdiction. 

 In Asahi Metal Industry Co., Ltd. v. Superior Court of California,
480 U.S. 102, 112 (1987), the United States Supreme Court, in a
plurality opinion, explained:

 [t]he placement of a product into the stream of
commerce, without more, is not an act of the
defendant purposefully directed toward the forum
state. Additional conduct of the defendant may
indicate an intent or purpose to serve the market
in the forum State, for example, designing the
product for the market in the forum State,
advertising in the forum State, establishing
channels for providing regular advice to
customers in the forum State, or marketing the
product through a distributor who has agreed to
serve as the sales agent in the forum State. But
a defendant's awareness that the stream of
commerce may or will sweep the product into the
forum State does not convert the mere act of
placing the product into the stream into an act
purposefully directed toward the forum State.


Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S.
102, 112 (1987). The Texas Supreme Court, in CMMC v. Salinas, 929
S.W.2d 435, 436 (Tex. 1996), applied the reasoning from Asahi to a
lawsuit between a Texas winery and a French manufacturer. In
CMMC, the winery ordered a winepress from CMMC, the French
manufacturer, through an independent distributor. As the court noted,
the winery contacted the independent distributor, and not vice versa. 
CMMC had no place of business in Texas and never had any direct
contact with the winery. CMMC had previously sold equipment into
the United States, including a direct sale to a different winery in Texas. 
CMMC arranged for the wine press to be transported from France to
Houston, FOB Houston. Thus, CMMC shipped the winepress into
Texas, and was aware that the destination of the press was Texas. 
After reviewing Asahi, the court concluded, that "CMMC's mere
knowledge that its winepress was to be sold and used in Texas and its
wiring the machine for use in the United States were not sufficient to
subject CMMC to the jurisdiction of Texas courts." Id. at 439. The
court reasoned:

 [t]his evidence simply does not show that CMMC
designed products for use in Texas, or that it
made any effort to market them here, or that it
took any other action to purposefully avail itself of
this market. Even Justice Brennan's view of the
stream-of-commerce doctrine would not allow
jurisdiction absent a "regular and anticipated flow
of products from manufacture to distribution to
retail sale." There is no flow of products from
CMMC to Texas; there is scarcely a dribble.

Id. (citation omitted). 

 As in CMMC, the Texas plaintiff in this case approached the
nonresident defendant outside of Texas for purchase of the product. 
Likewise, in this case the defendant was aware that the product was
bound for Texas and would eventually be distributed throughout the
United States. The evidence is not indicative of a "regular and
anticipated flow of products from manufacture to distribution to retail
sale." Nor does the evidence show Cherubino designed products for
use in Texas, or that it made any effort to market them in Texas, or that
it took any other action to purposefully avail itself of the Texas market. 
See id. We conclude Cherubino cannot be hailed before a Texas court
on the grounds that it shipped samples of juice into Texas or that it
knew the alleged non-conforming juice would be shipped to Texas,
would be mixed there, and distributed throughout the United States. 

 Cherubino also argues that facsimile transmissions sent to Texas
and phone calls betwen Spain and Texas during contract negotiations
do not constitute minimum contacts. There is no evidence that
Cherubino representatives ever traveled to Texas to negotiate the
contract. Indeed, the evidence indicates Jacaman, of Americana,
approached Cherubino in Spain for the purchase of juice. The record
does reveal that Cherubino sent faxes to Americana in Texas and that
the parties communicated by telephone between Spain and Texas. 

 However, minimum contacts are not established by merely
engaging in communications with a Texas corporation during
performance of a contract. Magnolia Gas Co., 994 S.W.2d at 691. 
Moreover, long-distance telephone calls to the forum state, even when
coupled with written correspondence and isolated trips to the forum
state, do not, standing alone, provide sufficient contacts to authorize
the exercise of jurisdiction in the forum state. Eakin v. Acosta, 21
S.W.3d 405, 410 (Tex. App.­San Antonio 2000, no pet. h.). Thus, faxes
and phone calls as part of a single business transaction do not confer
jurisdiction upon Texas courts over Cherubino. 

 Cherubino also maintains minimum contacts are not satisfied by
the alleged partial performance of the contract in Texas. Americana, by
contrast, urges that the establishment of a letter of credit constitutes
partial performance of the contract in Texas. According to Americana,
a non-resident defendant purposefully avails itself of a forum if it is
reasonably foreseeable that the resident plaintiff would perform a
material part of the contract in Texas. See Karl Rove & Co. v.
Thornburgh, 824 F.Supp. 662, 671 (W.D. Tex. 1993). However, merely
contracting with a Texas corporation does not satisfy the
minimum-contacts requirement. TeleVentures, Inc. v. International
Game Tech., 12 S.W.3d 900, 909 (Tex. App.--Austin 2000, pet. denied);
Magnolia Gas Co., 994 S.W.2d at 691. Partial performance of a
contract in Texas is "not the sine qua non of personal jurisdiction." 
Magnolia Gas Co., 994 S.W.2d at 692. Instead, the relevant question
is whether the defendant's contacts are of a sufficient quality and
nature that the exercise of personal jurisdiction comports with fair play
and substantial justice. Id. 

 Payments sent to the forum state for performance of a contract
are not determinative. Id. A fortiori, the unilateral act of the plaintiff in
securing a method of payment in Texas can hardly be considered a
substantial contact between the defendant and Texas. The parties'
course of dealing is that of an importer pursuing negotiations with a
foreign business. Based on the entire business transaction, we are
unable to conclude that Cherubino purposefully availed itself of the
Texas market. Instead, Cherubino's connection to Texas implicates a
single, though extended, business transaction. See Magnolia Gas Co.,
994 S.W.2d at 691. 

 Americana also alleged specific jurisdiction on the basis that
Cherubino committed fraud by presenting documents to Texas State
Bank indicating the juice had been accepted by Americana. Americana
presented evidence that, at the time Cherubino sent the documents to
Texas State Bank claiming Americana had accepted the juice, Cherubino
knew Americana had, in fact, rejected the juice. As Americana notes,
the Fourteenth Court of Appeals has held that when a nonresident
defendant "sends false information into a state, knowing it will be relied
upon by a resident of the forum state, there is a foreseeable
consequence of direct economic injury to the resident at its domicile." 
Memorial Hosp. Sys. v. Fisher Ins., 835 S.W.2d 645, 650 (Tex.
App.­Houston [14th Dist.] 1992, no writ); see also Hoppenfield v. Crook,
498 S.W.2d 52, 56 (Tex. App.­Austin 1973, writ ref'd n.r.e.). 

 The elements of fraud are: (1) a material misrepresentation was
made; (2) it was false; (3) when the representation was made, the
speaker knew it was false or the statement was recklessly asserted
without any knowledge of its truth; (4) the speaker made the false
representation with the intent that it be acted on by the other party; (5)
the other party acted in reliance on the misrepresentation; and (6) the
party suffered injury as a result. DeSantis v. Wackenhut Corp., 793
S.W.2d 670, 688 (Tex. 1990); Kajima Intern., Inc. v. Formosa Plastics
Corp., USA, 15 S.W.3d 289, 292 (Tex. App.--Corpus Christi 2000, pet.
filed). For a misrepresentation to be actionable, "the maker must intend
to influence the very person to whom he makes the representation." 
Kanon v. Methodist Hosp., 9 S.W.3d 365, 372 (Tex. App.­Houston
[14th Dist.] 1999, no pet.) (citing Westcliff Co. v. Wall, 153 Tex. 271,
267 S.W.2d 544, 546 (1954); Jefmor, Inc. v. Chicago Title Ins. Co., 839
S.W.2d 161, 163-64 (Tex. App.­Fort Worth 1992, no writ)). In this
case, Cherubino made the representations to the bank, and not to
Americana. Thus, Cherubino did not make the representations with the
intent that they be acted out by Americana; moreover, Americana did
not act in reliance upon the representations. 

 In Memorial Hosp. Sys. v. Fisher Ins., 835 S.W.2d 645, 650 (Tex.
App.­Houston [14th Dist.] 1992, no writ), the court found the defendant
was subject to jurisdiction in Texas after the Texas resident plaintiff
relied upon a misrepresentation of the nonresident defendant. 
Memorial Hosp. Sys., 835 S.W.2d at 650, 51. Here, there is no
allegation that Americana relied upon the representation made to the
bank. 

 In Portland Sav. & Loan Ass'n v. Bernstein, 716 S.W.2d 532, 536
(Tex. App.­Corpus Christi 1985, writ ref'd n.r.e.), overruled on other
grounds, Dawson-Austin v. Austin, 968 S.W.2d 319, 323 (Tex. 1998),
we explained that in reviewing a special appearance, the trial court
should rely solely upon necessary jurisdictional facts, and "should not
reach the merits of the case." When a plaintiff alleges that a tort was
committed in Texas, the only necessary proof is that the intentional act
was committed in Texas. Id. "Ultimate liability in tort is not a
jurisdictional fact, and the merits of the cause of action are not at
issue." Id. (citation omitted). 

 In Portland, we found sufficient jurisdictional facts to support the
finding of the commission of a purposeful act in Texas. Importantly, we
explained that the resident plaintiff's reliance on the representations of
the nonresident defendant occurred in Texas. Thus, without reaching
the merits of the case, this Court determined the resident plaintiff relied
upon the misrepresentation in Texas. Here, because there is no
evidence Americana relied on Cherubino's representation to the bank,
the allegation of fraud does not provide Texas courts with jurisdiction
over Cherubino.

 Finally, Americana alleged specific jurisdiction on the basis that
Cherubino fraudulently induced Americana to enter into the contract. 
According to Americana, Cherubino sent it a sample of juice conforming
to their standards in order to induce it to enter into the contract. When
Cherubino sent the juice in fulfillment of the contract, it was not of the
same quality as the sample and did not conform to Americana's
requirements. Thus, Americana contends Cherubino engaged in a "bait
and switch" scheme to induce it to enter into the contract.

 A plaintiff establishes a fraudulent inducement claim by showing
the elements of "a simple fraud claim." DeSantis, 793 S.W.2d at 688;
Balogh v. Ramos, 978 S.W.2d 696, 701 (Tex. App.--Corpus Christi
1998, pet. denied) (opin. on reh'g). An essential element of a fraud
claim is reliance on the misrepresentation. DeSantis, 793 S.W.2d 670
at 688.

 Jacaman testified that she received samples on September 3,
1997, and September 24, 1997, which were rejected because of
inadequate quality. Thereafter, on October 15, 1997, Cherubino sent
Americana an offer. Jacaman testified that as of that date, there was
a contract. The parties had agreed on quantity and pricing. The parties
also agreed as to the quality of the juice. According to Jacaman, the
contract was contingent upon Cherubino sending samples conforming
with its requirements. On October 27, 1997, Americana received a
sample conforming to Cherubino's quality requirements. Because it is
undisputed that there was a contract prior to Americana receiving this
conforming sample, the conforming sample could not have induced
Americana to enter into the contract. The only samples received by
Americana prior to the existence of the contract were non-conforming
samples which were rejected. That Cherubino subsequently sent
Americana a conforming sample was, if anything, a fulfilment of a
contingency of the contract. This allegation of fraud does not give the
trial court specific jurisdiction over Cherubino. 

 Cherubino has shown that it lacked systematic and continuous
contacts with Texas, and that it took no action in Texas giving rise to
Americana's cause of action. Accordingly, Cherubino has met its
burden of negating all bases of personal jurisdiction. Having concluded
Cherubino established it did not have minimum contacts with Texas,
we need not examine whether the assertion of personal jurisdiction over
Cherubino would offend traditional notions of fair play and substantial
justice. Appellant's second issue is sustained. 

 The judgment of the trial court is REVERSED and DISMISSED for
lack of personal jurisdiction. 

 NELDA V. RODRIGUEZ

 Justice


Opinion ordered published.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this the 14th day of December, 2000.


 

1. Texas State Bank was non-suited from the case and is not a party
to the appeal. 
2. During the special appearance hearing, the trial court took judicial
notice of its file, which included the temporary injunction proceeding. 
For our review, a reporter's record from the temporary injunction
hearing has been included in the record. 
3. Counsel for Cherubino appeared at and participated in the
temporary injunction hearing subject to the special appearance. A
defendant waives its objection to personal jurisdiction if it makes a
general appearance. Every appearance not in compliance with Rule
120a of the Texas Rules of Civil Procedure is a special appearance. Tex.
R. Civ. P. 120a (1). A special appearance "shall be heard and
determined before a motion to transfer venue or any other plea or
pleading may be heard." Tex. R. Civ. P. 120a (2). Here, because the
temporary injunction hearing was related to an ancillary matter which
did not resolve the issues of law or fact alleged in the underlying suit,
we conclude counsel's appearance and participation did not constitute
a general appearance. Cf. Perkola v. Koelling & Assocs., Inc., 601
S.W.2d 110, 112 (Tex. Civ. App.­Dallas 1980, writ dism'd) (in case
involving waiver of plea of privilege for venue, appearance at hearing on
temporary injunction did not constitute appearance in main suit for
permanent injunction and damages); Green v. Green, 424 S.W.2d 479,
481 (Tex. Civ. App.­Tyler 1968, no writ); see also Walling v. Metcalfe,
863 S.W.2d 56, 58 (Tex. 1993) (purpose of temporary injunction is to
preserve status quo pending trial on the merits).