COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-161-CV
 
 
LUCAS COLE AND                                                               APPELLANTS
ALBERTA COLE
 
V.
 
LARRY C. JOHNSON AND                                                       APPELLEES
RHEA F. JOHNSON
 
 
------------
 
FROM THE 348TH DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        This 
case involves the nondisclosure of certain information regarding the foundation 
of a home purchased by Lucas Cole and allegedly also by his wife, Alberta Cole 
(collectively, “the Coles”), from Larry C. Johnson and Rhea F. Johnson 
(collectively, “the Johnsons”). In four points, the Coles assert error on 
the part of the trial court in granting summary judgment on behalf of, and 
awarding attorney’s fees to, the Johnsons, resulting in the dismissal of the 
Coles’ suit.
II. Factual Background
        This 
is a case of a faulty foundation’s failure. On October 15, 2000, Lucas Cole 
entered into a contract with the Johnsons to purchase their home at 3302 
Tranquility Drive, Arlington, Tarrant County, Texas. On November 17, 2000, the 
sale of the house was completed. Among the closing papers was a two-page 
notarized document signed by Lucas Cole on November 17, 2000, which indicated 
that the sale price was being lowered two thousand dollars in lieu of foundation 
repairs, that the Johnsons would be held harmless for any present or future 
repairs, and that the property was being purchased in an “as-is” condition. 
For reasons that are not indicated in the record, Alberta Cole, the wife of 
Lucas Cole, was not named as a party and did not sign the Residential Sales 
Contract, the Acknowledgment of Receipt of the Sellers’ Disclosure Notice, or 
the November 17, 2000 notarized document, although she was named as a 
“buyer” in the notarized document.
        In 
connection with the purchase of the home, numerous other documents were executed 
or provided by the Johnsons, including (1) a fifteen-page concrete and soils 
testing report dated May 11, 1993 from the Hooper Group, Inc. to Koos and 
Associates, Inc., (2) a ten-page foundation investigation dated May 28, 1993 
submitted to United States Automobile Association Insurance (“USAA”) by Koos 
Engineering and Associates (“Koos”), (3) a four-page report from McHale 
Consulting Engineering (“McHale”) to Ram Jack Foundation Repair (“Ram 
Jack”) dated March 1, 1995, (4) core drilling and testing reports from Don 
Illingworth to Terracon Consultants, Inc. (“Terracon”) dated February 22, 
1996, (5) a ten-page report with attachments from to Don Illingworth and 
Associates, Inc. dated March 1, 1996 concerning sub-surface exploration and 
laboratory testing, (6) several pages of bid estimates and a contract for work 
between Extra Mile Construction Company and the Johnsons dated June 17, 1996, 
(7) other documents relating to bid estimates and pier placements by Ram Jack, 
(8) a foundation report summary running from 1993 to 2000, and (9) other 
miscellaneous documents related to the foundation and work thereon, all totaling 
fifty-five pages.
        These 
documents revealed that USSA and Koos prepared a foundation and soil study 
concerning the property in 1993 and, as a result, Ram Jack installed twelve 
piers to repair the foundation. In 1995, McHale Engineering did another 
foundation and soils study for Ram Jack resulting in the application of 
mudjacking to the center of the home. In 1996, Terracon prepared a soils study 
for the homeowner to ascertain the type of foundation that would be needed if an 
additional room were added to the home. Also in 1996, work was performed on the 
drainage along the west and the south sides of the house by Extra Mile 
Construction. In 2000, two additional piers were installed, the Ram Jack piers 
were adjusted, and brick masonry was repaired by Extra Mile Construction.
        The 
disclosure statement, to which the fifty-five pages of documentation was 
attached, indicated that the foundation and drainage had been inspected four 
times by Koos, Ram Jack, McHale, and Terracon; that the foundation had been 
repaired with the explanation of “see report”; that there had been house 
settling and soil movement with the explanation of “see reports” for the 
house settling; that repairs had been made to the foundation of the property 
since its original construction; that the seller had obtained a written report 
on the condition of the foundation, which was attached to the disclosure 
statement; that the seller had obtained a written report about drainage; that 
repairs had been made to the drainage of the property since its original 
construction; that the owner was not aware of any undisclosed defective 
condition; that the owner was unaware of any current defective condition to the 
drainage; and that there was no builder’s warranty or other 
non-manufacturer’s warranty on the property.
        After 
the closing on the home, during a telephone conversation between Rhea Johnson 
and Alberta Cole, Rhea mentioned to Alberta that the Ram Jack foundation work 
had failed, that Ram Jack had refunded their fee to the Johnsons, and that the 
Ram Jack warranty had been released in connection with the refund.
III. Procedural Background
        Subsequent 
to the conversation between Alberta and Rhea, the Coles filed suit against the 
Johnsons and others alleging breach of contract, violation of the DTPA, 
negligent misrepresentation, common law fraud, statutory fraud in a real estate 
transaction, and negligence, all based on the Rhea/Alberta telephone 
conversation. They specifically alleged that the Johnsons withheld substantial 
information concerning recommendations for repairs that they had elected not to 
undertake and the resulting concealed, unrepaired foundation defect. They prayed 
for economic damages, mental anguish, “additional damages,” prejudgment 
interest, attorney’s fees, and costs of suit. The Johnsons answered with a 
general denial, asserted affirmative defenses, and requested attorney’s fees.
        On 
March 19, 2004, a hearing was heard on a “traditional” summary judgment 
motion filed by the Johnsons and Ebby Halliday Real Estate Inc., d/b/a Ebby 
Halliday. As a result of the hearing, certain objections to the Coles’ summary 
judgment response and evidence were denied in part and granted in part, summary 
judgment was granted to the Johnsons, and attorney’s fees and costs were 
awarded to the Johnsons. The summary judgment signed by the trial court 
concludes with, “This judgment finally disposes of all claims and all parties 
and is appealable.” Therefore, it is a final judgment subject to appeal. See 
Lehmann v. Har-Con Co., 39 S.W.3d 191, 206 (Tex. 2001). The trial court did 
not specify the reasons for its grant of summary judgment. This appeal followed.
IV. Standard of Review
        In 
a “traditional” summary judgment case, the issue on appeal is whether the 
movant met his summary judgment burden by establishing that no genuine issue of 
material fact exists and that the movant is entitled to judgment as a matter of 
law. Tex. R. Civ. P. 166a(c); S.W. 
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston 
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). The burden of 
proof is on the movant, and all doubts about the existence of a genuine issue of 
material fact are resolved against the movant. S.W. Elec. Power Co., 73 
S.W.3d at 215; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 
1997); Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 
S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence and its 
reasonable inferences in the light most favorable to the nonmovant. Great Am., 
391 S.W.2d at 47. In deciding whether there is a material fact issue precluding 
summary judgment, all conflicts in the evidence are disregarded and the evidence 
favorable to the nonmovant is accepted as true. Harwell v. State Farm Mut. 
Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995). Evidence that favors the 
movant's position will not be considered unless it is uncontroverted. Great 
Am., 391 S.W.2d at 47. The summary judgment will be affirmed only if the 
record establishes that the movant has conclusively proved all essential 
elements of the movant's cause of action or defense as a matter of law. Clear 
Creek Basin, 589 S.W.2d at 678.
        A 
defendant is entitled to summary judgment if the summary judgment evidence 
establishes, as a matter of law, that at least one element of a plaintiff’s 
cause of action cannot be established. Elliott-Williams Co. v. Diaz, 9 
S.W.3d 801, 803 (Tex. 1999). The defendant as movant must present summary 
judgment evidence that negates an element of the plaintiff’s claim. Centeq 
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). Once the defendant 
produces sufficient evidence to establish the right to summary judgment, the 
burden shifts to the plaintiff to come forward with competent controverting 
evidence raising a genuine issue of material fact with regard to the element 
challenged by the defendant. Id. A defendant is entitled to summary 
judgment on an affirmative defense if the defendant conclusively proves all the 
elements of the affirmative defense. Rhone-Poulenc, Inc. v. Ramirez, 997 
S.W.2d 217, 223 (Tex. 1999). To accomplish this, the defendant-movant must 
present summary judgment evidence that establishes each element of the 
affirmative defense as a matter of law. Ryland Group, Inc. v. Hood, 924 
S.W.2d 120, 121 (Tex. 1996).
        On 
appeal, the first three points raised by the Coles address possible reasons for 
the trial court’s granting of the summary judgment and assigns error to each. 
Specifically, point number one is error assigned by both Lucas and Alberta Cole, 
point number two is error assigned by Lucas Cole, and point number three is 
error assigned by Alberta Cole. The Coles’ fourth point concerns the awarding 
of attorney’s fees to the Johnsons because they prevailed at the trial court 
level. This point is dependent on our determination of their first three points. 
We will affirm.
V. Points on Appeal
        A. Disclosures
        In 
their first point, the Coles assert that the trial court erred if it granted 
summary judgment to the Johnsons based on the finding that the Johnsons were 
absolved of any further duty to disclose additional information regarding the 
Ram Jack repair work above and beyond what had been disclosed prior to the sale 
of the property. As previously stated, all the Coles’ causes of action are 
based on the Rhea/Alberta telephone conversation and the alleged omission of 
information provided to the Coles regarding the failure of the Ram Jack pier 
work. Specifically, they complain that “the 1995 foundation repair by of [sic] 
Ram Jack’s 1993 foundation work had failed and resulted in a refund to them 
[the Johnsons] of the money paid to Ram Jack for the 1993 job and cancellation 
of a warranty it had extended to the Johnsons for that work,” which was not 
disclosed to them. The Coles, citing SmithKline v. Beecham Corporation v. Doe, 
903 S.W.2d 347, 353 (Tex. 1995), Hoggett v. Brown, 971 S.W.2d 472, 487 
(Tex. App.—Houston [14th Dist.] 1997, pet. denied), and Ralston Purina 
Company v. McKendrick, 850 S.W.2d 629, 636 (Tex. App.—San Antonio 1993, 
writ denied), assert that the Johnsons breached “a general duty to disclose 
information in a transaction [that] is not absolved when a party makes a partial 
disclosure that, although true, conveys a false impression.” The Coles assert 
that this omission denied them the opportunity to evaluate the information which 
should have been disclosed to them. However, the Coles ignore the final four 
words of their own argument, that is, that a partial disclosure may not absolve 
the disclosing party if the partially disclosed information conveys a false 
impression. Moreover, a seller of a house is charged only with disclosing 
such material facts as to put a buyer exercising reasonable diligence on notice 
of the condition of the house. Pfeiffer v. Ebby Halliday Real Estate, Inc., 
747 S.W.2d 887, 890 (Tex. App.—Dallas 1988, no writ). The Coles were aware 
there was no foundation warranty for the premises. They were aware that the 
property had an extensive history of foundation problems and foundation work. 
They were aware that foundation and drainage repairs had been made following the 
Ram Jack foundation work. They were aware that the Ram Jack foundation work had 
not cured the foundation problems because the foundation had continued to move 
and had to be repaired following that work. Specifically, the McHale Engineering 
report, which was prepared after Ram Jack installed twelve piers in 1993 and 
after further attempted repairs in 1995, indicated that
  
some of the pier tops were exposed and the piers appeared to be loose. This is a 
condition that occurs when the foundation heaves or rises. . . . The residence 
appears to be experiencing foundation movement around the perimeter of the 
residence . . . . [This] consists primarily of cracked masonry, out of plumb 
windows and deflection of the frieze board at the top of the wall.

        The 
report further finds evidence of sheetrock cracking throughout the residence in 
the walls and in the ceilings and slab cracks in the entry tile and throughout 
the garage. The report opines that
  
[the] residence is experiencing [heaving] . . . . This foundation heave appears 
to have occurred since the residence was underpinned . . . . The elevation 
differentials in this residence are significant. . . . The excess moisture below 
this residence may have created considerable instability in the subgrade soil. 
As the subgrade soils dry over the next few years mud jacking of the interior 
slab may have to be repeated.

        It 
is obvious, even to a layman, that the foundation work performed by Ram Jack had 
not corrected all the problems with the property’s foundation, that these 
problems were ongoing at the time of the McHale report, and that further 
problems might occur in the future. The disclosures by the Johnsons did not 
convey a false impression and assuredly would have put a buyer using reasonable 
diligence on notice as to the residence’s condition. This point is overruled.
        B. “As-is” Condition
        In 
their second point, the Coles assert that the trial court erred if it granted 
summary judgment to the Johnsons and against Lucas Cole based on his notarized 
signing of the November 17, 2000 statement. That document, signed only by Lucas 
Cole, states as follows:
   
We, the undersigned buyers hereby except [sic] the above referenced property in 
its present condition. We are in agreement to lower the sales price from 
$136,000 to $134,000 in lieu of foundation repairs. We agree to hold Larry C. 
Johnson and Rhea Ann Johnson, Ebby Halliday, Patt Klemmer, and Hexter-Fair Title 
Company harmless of any present or future repair. We are buying the property in 
as is condition.

        There 
is one page of briefing by the Coles on this point. The Coles assert that no 
language in the statement waives or releases claims against the Johnsons, and 
they appear to assert that fraud, presumably on the part of the Johnsons, would 
abrogate any reliance that could be placed on the document, citing case law for 
the general provision that fraud vitiates whatever it touches. The Coles do not, 
however, favor this court with an explanation of what type of fraud they are 
referring to, what elements constitute the variety of fraud they are addressing, 
or any citations to the record for the factual basis of whatever fraud they are 
alleging. While we agree with the general statement contained in the cases cited 
by the Coles, such as Kanon v. Methodist Hospital, 9 S.W.3d 365, 369 
(Tex. App.—Houston [14th Dist.] 1999, no pet.), wherein the court held that 
fraud could abrogate the affirmative defense of the statute of limitations 
(which is not involved here), without assertions of facts supporting whatever 
“fraud” is alleged or citations to the record confirming those facts, this 
case law is of no help to the Coles. Further, and contrary to the position of 
the Coles, a hold harmless agreement such as we have here is synonymous with a 
release, and it relieves the released party of responsibility. Dresser 
Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993).
        With 
regard to the acceptance of the property “as-is,” the Johnsons asserted this 
as an affirmative defense giving rise to “waiver, estoppel and release.” As 
pointed out by the Johnsons, our supreme court has held that in general an 
“as-is” clause will defeat the element of causation in DTPA, fraud, and 
negligence claims. Prudential Ins. Co. of Am. v. Jefferson Assocs., 896 
S.W.2d 156, 161 (Tex. 1995). The enforcability of such a clause depends on the 
totality of the circumstances surrounding such an agreement, including whether 
the clause is an important part of the basis of the bargain as opposed to just 
boilerplate and whether the parties are in relatively equal bargaining 
positions. Id. at 162. In this matter, the “as-is” agreement is 
obviously a separately negotiated agreement with consideration given that is 
between equal individuals as buyer and seller. That being said, when an 
“as-is” agreement is executed, the buyer agrees to make his own appraisal of 
the bargain and accept the risk associated therewith, whereas the seller gives 
no express or implied guarantees regarding the value or the condition of the 
property and the buyer relies on his own determination of the condition and the 
value of the purchase. Id. at 161. As such, absent fraud, which has not 
been shown here, the agreement is enforceable as previously discussed. Smith 
v. Levine, 911 S.W.2d 427, 431-32 (Tex. App.—San Antonio 1995, writ 
denied). Therefore, no fraud having been shown and the “as-is” agreement 
being an enforceable one, point number two is overruled.
        C. Contracting Parties
        In 
their third point, the Coles argue that if the trial court denied summary 
judgment to Alberta Cole because she was not a party to the contract, the court 
was in error. The Coles argue that although she did not sign the contract for 
the purchase of the house, “she shared a practical and property interest with 
her husband in its acquisition.” No further description, let alone case law, 
is provided to this court describing what sort of interest this purports to be. 
The Coles also assert that she had standing to bring a DTPA claim, if no others. 
Alberta Cole could have standing under the DTPA if she established that the 
primary purpose for the acquisition was for her benefit. Arthur Anderson 
& Co. v. Perry Equip. Co., 945 S.W.2d 812, 815 (Tex. 1997). There is no 
evidence, nor argument, nor citation to the record that this was in fact the 
case, let alone what section of the DTPA was alleged to have been violated. The 
Coles’ third point is overruled.
        D. Attorney’s Fees
        In 
their fourth point, the Coles assert that the Johnsons would not be entitled to 
attorney’s fees awarded by the trial court if the Coles were to prevail in 
this appeal. As the Coles did not prevail in this appeal as previously 
discussed, this point is likewise overruled.
VI. Conclusion
        Having 
overruled all the Coles’ points, the judgment of the trial court is affirmed.
 
 
                                                                  BOB 
MCCOY
                                                                  JUSTICE
  
 
PANEL B:   LIVINGSTON, 
DAUPHINOT, and MCCOY, JJ.
 
DELIVERED: February 3, 2005