Affirmed in Part, Reversed and Rendered in Part, and Opinion filed
September 26, 2006








Affirmed
in Part, Reversed and Rendered in Part, and Opinion filed September 26, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00742-CV

____________

 

EDWARD EUGENE MAYS AND TRACI BAILEY
MAYS, D/B/A/ PRO-TECH RESTORATION, Appellants

 

V.

 

CONNIE PIERCE, Appellee

 



 

On Appeal from the 190th
District Court

Harris County, Texas

Trial Court Cause No. 03-43931

 



 

O P I N I O N








Following a bench trial in this breach-of-contract,
Deceptive Trade Practices Act (DTPA),[1]
and conversion case, the trial court rendered judgment in favor of appellee
Connie Pierce, awarding her actual damages of $43,678.50, additional DTPA
damages of $43,678.50, attorneys= fees, and pre-
and post-judgment interest.  Appellants Edward Eugene Mays and Traci Bailey
Mays, d/b/a/ Pro-Tech Restoration (APro-Tech@) challenge the
legal and factual sufficiency of the evidence to support liability and damages.

Because Pierce=s allegations do
not rise above a breach-of-contract claim, we reverse that part of the judgment
awarding Pierce additional DTPA damages, and render judgment that Pierce take
nothing on her DTPA claims.  Because Pierce presented sufficient evidence to
establish her breach-of-contract claim and associated damages, we affirm the
remainder of the judgment awarding actual damages, attorneys= fees, and pre-
and post-judgment interest.

I.  Factual and Procedural Background

On December 6, 2001, Pierce and Edward Mays (AMays@) signed a work
order/contract for Pro-Tech to perform work on Pierce=s home.  The scope
of the work was described as Amold & water remediation/restoration
of contents & structure.@  The contract also provided, AIt is understood
that payment for the above services will be paid from Insurance Company
Proceeds and Pro-Techs [sic] name is to be on all checks . . . Billing
will be made directly to the Insurance Company, however if payment is not made
it will be the responsibility of the insured.@ (emphasis in
original).  Pro-Tech then arranged for mold testing.  On December 17, 2001,
Mays told Pierce, based on the results of the test, her house contained toxic
mold, the mold was dangerous, and she and her daughter had to leave the house Awith the clothes
on their back[s],@ and move into a  motel.  Pierce and her
daughter did so.








By mid-January 2002, Pro-Tech had submitted a bid to
Farmers Insurance (Pierce=s insurance company) for the costs to
remediate and rebuild the house.  The bid included a room-by-room ABuilding Est.,@ which contained
itemized costs of remediation totaling $15,841.81, together with a room-by-room
estimate of the costs for reconstruction totaling $9,647.37 before depreciation
and $7,142.51 after depreciation.[2] 
Farmers calculated a net claim of $24,905.50, after depreciation, for the full
cost to remediate and reconstruct the house and to conduct post-remediation
testing.[3] 
Pro-Tech sent a facsimile copy of these documents to Michael Pierce.[4] 
According to the Pierces, this claim was for mold remediation, post-remediation
testing, and rebuilding the house.  Pro-Tech separately submitted a bid of
$12,296.00 for contents remediation, which, according to Farmers=s documents,
included two months of storage through April 11, 2002.  None of the bids
estimated costs for packing and removing the contents of the house.  

In January and February 2002, Pierce received checks from
Farmers in the amounts of $24,905.50, $4,216.00, and $7,940.83.  She gave the
first two checks totaling $29,121.50  to Pro-Tech and kept the third check.[5] 
According to Pierce, the first two checks represented partial payment for the
mold remediation of the house, the contents, and the rebuilding of the house,
and the third check represented additional rebuilding costs.








In early 2002, Pro-Tech placed toxic warning signs on the
exterior of the house and removed carpet, cabinets, sheetrock, appliances, and
the air conditioner.  Pro-Tech virtually emptied the living area of the house
of its contents, moving some items into off-site storage and placing others,
such as toilets, bathtubs, appliances, clothing, and household items in the
garage.  Pro-Tech left the job on March 3, 2002, without rebuilding the house,
remediating its contents, or furnishing a post-remediation certificate showing
the house had been cleared of mold.  No evidence was presented that Pro-Tech
informed Pierce it was stopping work on the project at that time.  Pro-Tech did
not return Pierce=s house key until July 2002. 

In July 2002, Pierce hired another company to test her
house for mold.  The test cost $875.00.  The results indicated the house still
contained toxic mold.[6]

Farmers paid Pierce=s living expenses
through April 2002.  Because her house was still not habitable, Pierce moved
her contents from Pro-Tech=s off-site storage facility to a different
facility in July.  She incurred $360.00 in moving expenses and $822.00 in
storage fees during the time required to make her house suitable for living. 
Pierce later discovered some of the property stored off-site had been damaged
or destroyed.  Pierce testified that she was unable to salvage any of the
property Pro-Tech had moved to the garage, and she opined the Afair value@ of the damaged or
destroyed items in the garage was $8,226.00.[7] 
Finally, Pierce believed a credit card had been taken from her house or
property at some time during the period when Pro-Tech had custody of the house
and property.  She reported $126.36 of fraudulent charges on the card.

Pierce subsequently sold the home to her former husband for
$5,000.00 and sued Pro-Tech, alleging breach of contract, misrepresentations
and unconscionable actions under the DTPA, and conversion based on unauthorized
use of the credit card.

Trial was to the bench.  Mays testified Pro-Tech was paid
for remediation and was never paid to rebuild the house or remediate its
contents.[8] 
He further testified that, if Pro-Tech had been paid to restore the contents
and structure, it would have done so.








The trial court rendered judgment in favor of Pierce,
awarding her actual damages of $43,678.50, additional DTPA damages of
$43.678.50, attorneys= fees, and pre- and post-judgment
interest.  Pro-Tech filed a motion for new trial, which was denied by operation
of law.[9]

II.  Issue Presented

In a single issue, Pro-Tech contends (1) there is no
evidence, or alternatively factually insufficient evidence, to establish
liability for Pierce=s DTPA claims; (2) the evidence is
legally, or alternatively factually, insufficient to support Pierce=s
breach-of-contract claims; (3) no evidence, or alternatively, factually
insufficient evidence, supports the theft/conversion claim; and (4) there is no
evidence, or alternatively, factually insufficient evidence, to support any of
the damages sought by, or awarded to, Pierce.

III.  Standard of Review








In a nonjury trial, when no findings of fact or conclusions
of law are filed or properly requested, it is implied that the trial court made
all the necessary findings to support its judgment.  Roberson v. Robinson,
768 S.W.2d 280, 281 (Tex. 1989); see Pharo v. Chambers Cty., 922 S.W.2d
945, 948 (Tex. 1996) (stating that, in a bench trial in which the trial court
does not file findings of fact or conclusions of law, appellate courts presume
the trial court made all findings in support of its judgment).[10] 
Nevertheless, because a complete reporter=s record is a part
of the appellate record in this case, appellants may challenge both the legal
and factual sufficiency of the trial court=s findings.  See
Roberson, 768 S.W.2d at 281.[11]  
We apply the same standards of review to these challenges as those applied in
review of jury findings.  See id.

Thus, on appeal, a party may challenge the trial court=s implied findings
by Ainsufficient
evidence@ or Ano evidence@ points the same
as a jury=s findings or a trial court=s findings of
fact.  See Julien v. Baker, 758 S.W.2d 873, 875 (Tex. App.CHouston [14th
Dist.] 1988, writ denied) (citing Burnett v. Motyka, 610 S.W.2d 735, 736
(Tex. 1980)).  In resolving no evidence points of error, we consider only that
evidence favorable to the judgment and disregard all that which is opposed to
it.  Id. (citing Int=l Bank, N.A. v.
Morales, 736 S.W.2d 622, 624 (Tex. 1987)).  However, in reviewing insufficient
evidence points, we must consider and weigh all the evidence, including any
evidence contrary to the trial court=s judgment.  Id.
(citing Burnett, 610 S.W.2d at 736; In re King=s Estate, 150 Tex. 662,
244 S.W.2d 660 (1952)).

IV.  Discussion

A.      Pierce=s DTPA Claims








Pierce alleged both an unconscionable action or course of
action in violation of Tex. Bus. &
Com. Code Ann. ' 17.50 (a)(3) (Vernon 2002) and false,
misleading, or deceptive acts or practices in violation of Tex. Bus. & Com. Code Ann. '' 17.46 (b) (5) and
(7) (Vernon 2002).  The two claims are distinct,[12]
and either basis will support recovery.[13] 
To recover under either theory, however, a plaintiff must establish more than a
mere breach of contract.  See Riddick v. Quail Harbor Condo. Ass=n, 7 S.W.3d 663,
670 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (stating that a
simple breach-of-contract claim is neither a DTPA violation nor an
unconscionable act).

Pro-Tech argues Pierce=s evidence of her
DTPA claims is insufficient because:  (1) Pierce failed to establish any
of the alleged misrepresentations that serve as the basis of her DTPA claims;
(2) there is no evidence to support any unconscionable action or course of
action by Pro-Tech; (3) Pierce failed to establish any reliance or causation in
relation to her DTPA claims; (4) Pierce=s claims are
essentially contractual claims, precluding liability under the DTPA; and (5)
there is no evidence, or factually insufficient evidence, to support any
implied finding Pro-Tech=s alleged conduct was knowing or
intentional under the DTPA. 

We discuss Pierce=s two DTPA claims
separately.

1.       Unconscionable
Action or Course of Action 

AUnconscionable action or course of action= means an act or
practice which, to a consumer=s detriment, takes advantage of the lack
of knowledge, ability, experience, or capacity of the consumer to a grossly
unfair degree.@  Tex. Bus.
& Com. Code Ann. ' 17.45 (5) (Vernon 2002).  A court
examines the entire transaction to determine whether a defendant took advantage
of a consumer to a grossly unfair degree.  See Chastain v. Koonce,
700 S.W.2d 579, 583 (Tex. 1985).  A plaintiff need not prove reliance to
establish a claim based on unconscionability.  Compare Tex. Bus. & Com. Code Ann. ' 17.50(a)(1)(B)
(requiring a claimant to demonstrate reliance in order to maintain an action
for a Alaundry list@ violation), with
Tex. Bus. & Com. Code Ann. ' 17.50(a)(3)
(omitting reliance requirement).  The plaintiff also need not prove specific
representations.  See Teague, 793 S.W.2d at 54 (AA consumer may
maintain a DTPA cause of action for unconscionable conduct even if the seller
made no specific misrepresentations.@).  








We interpret Pierce as arguing that the following supports
her claim of Pro-Tech=s unconscionable conduct:

Appellants ran Ms. Pierce and her
daughter out of their home with the clothes on their back, ripped up the home
beyond the point of habitability, deserted the job without providing proof that
the toxic mold had been removed, and failed to restore the home or contentsCindeed, had no
intention of doing so, despite the contract having been signed and full payment in advance for the services
having been made.

In stating that AAppellants ran
Mrs. Pierce and her daughter out of their home with the clothes on their back,@ Pierce refers to
Pro-Tech=s representation
that there was toxic mold in the house, and its instruction to Pierce to vacate
the premises.[14] 
Therefore, we must determine whether the following acts, individually or
collectively, are unconscionable: (1) Pro-Tech advised Pierce to remove
her family from the house immediately, without taking time to pack;
(2) Pro-Tech Aripped up the home beyond the point of
habitability@; (3) Pro-Tech ceased work on the contract; and
(4) Pro-Tech had no intention of performing the contract.

First, Pierce presented no evidence that Pro-Tech misrepresented
the presence of mold or its risks, and Pierce does not contend it was
unnecessary for her family to leave the home.  Second, Pro-Tech=s actions in Aripping up the
home@ were performed
pursuant to the contract and to Pro-Tech=s representations
to Pierce and her insurer that it was necessary to remove carpeting, air
conditioning, cabinetry, fixtures, sheetrock, etc.  Again, Pierce does not
contend these measures were unnecessary.  Pierce=s third contention
merely alleges breach of contract. 








Pierce finally contends Mays never intended to restore the
house or remediate its contents.  See Formosa Plastics Corp. USA v. Presidio
Engrs. & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998) (stating that
the promise of future performance constitutes actionable misrepresentation if
the promise was made with no intention of performing at the time the promise
was made, and evidence presented must be relevant to the defendant=s intent at the
time the defendant made the promise).[15] 
The determination of intent is uniquely an issue for the fact-finder because it
depends on the weight and credibility to be assigned to testimony. See
Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986). 
However, evidence Aso weak that it creates only a mere
surmise or suspicion of its existence . . . constitutes no
evidence.@  See T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 222 (Tex. 1992).  Here, Pro-Tech contends there is no evidence
it did not intend to perform the contract. 

In response to this argument, Pierce points only to Mays=s trial testimony
that (1) Pro-Tech would have done mold and water remediation, restoration of
contents and structure if it had been paid to do so, (2) over half of the
initial check to Pro-Tech for more than $24,000 was for Acontent packout,@ not remediation,
and (3) Pro-Tech was never paid to do any remediation of the contents of the
house or personal property.  We cannot say this testimony constitutes some
evidence of Mays=s intent not to restore the home or
remediate its contents at the time he entered into the contract with Pierce.  








We note that Mays testified, AThere was never
any contract between Pro-Tech and Connie Pierce to rebuild the house,@ and courts have
held a party=s denial that he ever made a promise is a factor
showing no intent to perform when he made the promise.  See Spoljaric,
708 S.W.2d at 435.  However, when read in context, it is clear Mays contends
Pro-Tech was not paid to remediate the home=s contents or to
restore the building, and not that Pro-Tech had never agreed to perform the
work at all:

Q [by Pierce=s counsel]:   [The work order] is
what Pro-Tech said it was going to do for Mike and Connie Pierce, correct?

A [Mays]:                        Yes.

Q:                                   Mold
and water remediation, restoration of contents and structure, correct?

A:                                   That=s what we would
have done if we had been paid to do that.  

* * * * *

Mays:          We did exactly what we were paid to do.  We were paid to
do remediation of the home, we remediated the home.  We were paid to move the
contents out of the home, we did that.  We were never paid to rebuild the home,
and that=s why we never rebuilt the home.

Here, the evidence
that Pro-Tech entered into the agreement with no intent of performing is Aso weak that it
creates only a mere surmise or suspicion of its existence.@  See T.O.
Stanley Boot Co., 847 S.W.2d at 222.  AWhen evidence is
so weak[,] it constitutes no evidence.@  Id. 
Because the evidence is so weak that it creates only a suspicion of Pro-Tech=s lack of intent
to perform, we conclude the evidence is legally insufficient to support Pierce=s claim of an
unconscionable action or course of action.

2.       False,
Misleading, or Deceptive Acts or Practices  

Pierce
states an additional or alternative DTPA claim pursuant to Tex. Bus. & Com. Code Ann. ' 17.46(b)(5),
(7).  These subsections provide that false, misleading, or deceptive acts or
practices include:








(5)     representing that goods or services have sponsorship, approval,
characteristics, ingredients, uses, benefits, or quantities which they do not
have or that a person has a sponsorship, approval, status, affiliation, or
connection which he does not;

* * * * *

(7)     representing
that goods or services are of a particular standard, quality, or grade, or that
goods are of a particular style or model, if they are of
another . . . .

Tex. Bus. & Com. Code Ann. ' 17.46(b)(5), (7).

In her claim under section 17.46(b), Pierce relied on
evidence of the following representations:  (1) Pro-Tech would, in a
timely manner, remove the toxic mold and would restore the contents and
structure as set forth in the work order/contract, and (2) Pro-Tech would
provide a certificate showing the house had been retested and was safe.  The
only evidence of such representations is the contract itself and bids prepared
by Pro-Tech after entering into the contract.  The bids include the costs of
post-remediation testing and the costs of storing Pierce=s personal
property for two to three months.  

Pro-Tech contends Pierce=s 17.46(b) claim
constitutes nothing more than a breach-of-contract claim.  The determination of
whether a breach of contract rises to the level of a misrepresentation
sufficient to trigger the DTPA is a fact‑driven inquiry.  Chilton Ins.
v. Pate & Pate Enter., Inc., 930 S.W.2d 877, 890 (Tex. App.CSan Antonio 1996,
writ denied).  Whether the facts, once ascertained, constitute a DTPA
misrepresentation is a question of law.  Id.

Here, Pierce did not show she was harmed by Pro-Tech=s representations,
but only showed harm caused by Pro-Tech=s failure to
perform.  See Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14B15 (Tex. 1996)
(per curiam) (holding no DTPA violation when statements of Yellow Pages
representative did not cause any harm, but, instead, failure to run
advertisement actually caused plaintiff=s lost profits). 
Pierce contends Pro-Tech never intended to restore the house or remediate its
contents, but as discussed previously, we conclude the evidence of Pro-Tech=s intent is
legally insufficient.








Accordingly, we hold Pro-Tech=s failure to
perform as represented does not rise above a breach-of-contract claim, and
therefore is not actionable under the DTPA.  See id.  Having concluded
there is legally insufficient evidence to support Pierce=s DTPA claims, we
sustain Pro-Tech=s issue to the extent Pro-Tech challenges
the sufficiency of the evidence to support those claims.  Accordingly, we
reverse that portion of the judgment awarding additional DTPA damages of
$43,678.50 and render judgment that Pierce take nothing on her DTPA claims.

B.      Pierce=s
Breach-of-Contract Claim

The elements of a breach-of-contract action are (1) the
existence of a valid contract, (2) performance or tendered performance by the
plaintiff, (3) breach of the contract by the defendant, and (4) damages
sustained by the plaintiff as a result of the breach.  Frost Nat=l Bank v. Burge, 29 S.W.3d 580,
593 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  A breach occurs
when a party fails or refuses to do something he has promised to do.  See
Townewest Homeowners Ass=n v. Warner Commc=n Inc., 826 S.W.2d 638,
640 (Tex. App.CHouston [14th Dist.] 1992, no writ).








Pro-Tech argues Pierce=s evidence of her
breach-of-contract claim is insufficient because Pierce failed to (1) offer any
competent evidence to establish Pro-Tech failed to perform mold remediation
services, (2) establish any contractual duties regarding potential physical
damage to the residence or contents, and (3) establish any contractual duty for
Pro-Tech to rebuild or remodel her residence.[16] 
In her petition, Pierce alleged Pro-Tech breached the contract Awhen Pro-Tech
Restoration failed to complete the services of mold remediation, thus leaving
the house uninhabitable and the contents unusable.  Pro-Tech Restoration
further breached the contract described in this petition when they [sic] caused
damage to Connie Pierce=s house and the contents of the house.@  At trial, Pierce
asserted Pro-Tech had contracted to rebuild or restore her house and the contents
after it completed remediation, but never did so.

1.       Restoration
of the Structure and Remediation of Contents  

It is undisputed that Pro-Tech ceased work on Pierce=s house on March
3, 2002, but did not return the key until July 2002.  At the time Pro-Tech
left, it had placed biohazard warning signs on the exterior of the house,
removed carpet, cabinets, appliances, sheetrock, and the air conditioner, and
virtually emptied the living area of the house of its contents, moving some
items into off-site storage and placing others items in the garage.  It is also
undisputed that Pro-Tech did not rebuild the house or remediate the contents. 
Additionally, there was testimony indicating Pro-Tech did not provide Pierce
with a certificate showing the house had been retested and was clear of toxic
mold.[17] 
Thus, the issue in this case is not what Pro-Tech did or failed to do, but
rather the scope of what Pro-Tech promised to do.  By the terms of the
contract/work order, Pro-Tech described the Ascope of the work
to be performed@ as Amold & water
remediation/restoration of contents & structure.@  Thus, the
contract between Pierce and Pro-Tech unambiguously included remediation of the
home=s contents and
restoration of the structure.

Moreover, Pro-Tech prepared a set of documents under the
heading of AEstimates and Tests.@  These documents
included a bid Pro-Tech submitted to Farmers for the dwelling, including a
room-by-room estimate of the itemized costs for remediation and a separate room-by-room
estimate of the itemized costs of reconstruction.  These documents also listed
the cost for post-remediation testing.  Based on these figures, Farmers
calculated a net claim for the dwelling, including mold remediation,
post-remediation testing, and rebuilding the house.  Pro-Tech also submitted a
separate bid for remediation of the contents.








We conclude there is legally sufficient evidence that
Pro-Tech breached the terms of the work order/contract when it failed to
remediate the contents of Pierce=s home and restore
the structure.  We also conclude there is legally sufficient evidence that
Pro-Tech breached a promise to Pierce when it did not provide a certificate
showing the house had been retested for mold.

2.         Mold
Remediation  

Pro-Tech also argues the evidence is insufficient to
support a finding of breach of contract because Pierce presented no evidence
Pro-Tech failed to perform mold remediation.  With this argument, Pro-Tech
attempts to isolate the promise to perform mold remediation from the remaining
promises in the contract and insurance bids.  As discussed above, the contract
contemplated that Pro-Tech would return Pierce=s house and its
contents to her in a remediated and restored state.  Pro-Tech=s argument is
therefore contrary to the general principle of contract construction that
requires a court to examine the entire agreement in an effort to harmonize and
give effect to all provisions of the contract so that none will be rendered
meaningless.  See MCI Telecomms.  Corp. v. Tex. Utils.  Elec. Co., 995
S.W.2d 647, 652 (Tex. 1999).[18]


3.       Damage to
House and Contents  








In response to Pierce=s contention that
Pro-Tech breached the contract by damaging Pierce=s house and its
contents, Pro-Tech points to a hold-harmless cause in the work order/contract;
however, Pro-Tech did not plead release as an affirmative defense.  See Tex. R. Civ. P. 94 (stating party shall
set forth affirmatively release and any other matter constituting an avoidance
or affirmative defense); Cole v. Johnson, 157 S.W.3d 856, 862 (Tex. App.CFort Worth 2005,
no pet.) (stating hold-harmless agreement is synonymous with release).[19]

In summary, we hold the evidence is legally sufficient to
support the trial court=s implied finding that Pro-Tech promised
to perform mold remediation, post-remediation testing, and to remediate
the home=s contents and
rebuild the structure, but did not do so.  Accordingly, we overrule Pro-Tech=s issue to the
extent it challenges the sufficiency of the evidence on Pierce=s
breach-of-contract claim.

C.      Pierce=s Conversion Claim

Appellants challenge the legal and factual sufficiency of
the evidence to support Pierce=s claim for conversion.  Pierce does not
respond to this argument on appeal. 

Conversion is defined as the wrongful exercise of dominion
and control over another=s property in denial of or inconsistent
with the owner=s rights.  Green Int=l, Inc. v. Solis, 951 S.W.2d 384,
391 (Tex. 1997).  Here, Pierce alleges Pro-Tech converted one of her credit
cards, pointing to unauthorized purchases on the account; however, Pierce
presented no evidence that the amounts were charged by Edward or Traci Mays or
by anyone under Pro-Tech=s control.  Accordingly we sustain
Pro-Tech=s issue to the
extent it challenges the sufficiency of the evidence on Pierce=s conversion
claim.

D.      The
Challenges to Damages








Pro-Tech presents the following five arguments regarding
the trial court=s award of damages: (1) the evidence
is legally, or alternatively factually, insufficient to support any award based
on mental anguish; (2) Pierce failed to offer competent evidence to
establish any recoverable measure of damage available under the DTPA or her
breach-of-contract claims; (3) Pierce failed to offer competent evidence
to permit the recovery of out-of-pocket expenses; (4) Pierce failed to
offer competent evidence to recover the value of her personal property; and
(5) Pierce is not entitled to the recovery of attorneys= fees or additional
DTPA damages.  

The trial court rendered judgment in Pierce=s favor and
awarded actual damages of $43,678.50 without specifying the claim or claims on
which Pierce prevailed or the proven damages.  Having concluded that Pierce
presented sufficient evidence to support liability only on her
breach-of-contract claim, we address the sufficiency of Pierce=s evidence to
support damages for that claim.  

The ultimate goal in measuring damages for a breach‑of‑contract
claim is to provide just compensation for any loss or damage actually sustained
as a result of the breach.  Walden v. Affiliated Computer Servs., Inc.,
97 S.W.3d 303, 328 (Tex. App.CHouston [14th Dist.] 2003, pet. denied). 
The normal measure of damages in a breach-of-contract case is the benefit‑of‑the‑bargain
measure, the purpose of which is to restore the injured party to the economic
position it would have been in had the contract been performed.  SAVA
Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc., 128
S.W.3d 304, 317 n.6 (Tex. App.CDallas 2004, no pet.).  Nevertheless, as
the Seventh Court of Appeals explained in the context of discussing whether
damages for misrepresentation and breach of contract constitute double
recovery:

The theories of recovery for misrepresentation include out‑of‑pocket
expenses or loss of the benefit of the bargain.  The recovery of out‑of‑pocket
expenses compensates one for actual loss due to another=s representation while a benefit‑of‑the‑bargain
recovery allows the recovery of what an individual might reasonably have
expected to recover as the result of another=s representation.  In contract law, theories of recovery
for a breach of contract include reliance or expectancy damages.  Reliance
damages, similar to out‑of‑pocket recovery, reimburse one for
expenditures made towards the execution of the contract in order to restore the
status quo before the contract.  Expectancy damages, similar to benefit‑of‑the‑bargain
recoveries, award damages for the reasonably expected value of the contract. 
Thus, the theories of recovery for both tortious misrepresentation and breach
of contract are similar and necessarily involve the same type of damages . . .
.








Hart
v. Moore, 952 S.W.2d 90, 97 (Tex. App.CAmarillo 1997,
pet. denied).

In the present case, Pierce=s total request
for actual damages, whether arising from Pro-Tech=s breach of
contract or from its actions allegedly violating the DTPA, consists of the
following:


 
 
  
 $29,121.50
 8,226.00
 822.00
 875.00
 360.00
 15,000.00
 $54,404.50
 
 
  
 total
 amount Farmers Insurance paid to Pro-Tech
 damage
 to property stored in garage
 additional
 storage fees
 Apost-remediation@ inspection report
 moving
 expenses
 additional
 living expenses (6 months @ $2,500/month)
 total actual breach of contract/DTPA damages requested
 
 


 

 

The trial court=s award of
$43,678.50 was therefore $10,726.00 less than Pierce=s requested
DTPA/breach-of-contract damages.  

A trial court has
discretion to award damages within the range of the evidence presented at
trial.  City of Houston v. Harris County Outdoor Adver. Ass=n, 879 S.W.2d 322,
334 (Tex. App.CHouston [14th Dist.] 1994, writ denied).  With this
precept in mind, we turn to Pro-Tech=s specific
arguments challenging the sufficiency of the evidence to support the award of
actual damages.

1.       Mental
Anguish Damages  

Pro-Tech first
challenges the sufficiency of the evidence to support an award of mental
anguish damages.  Although Pierce pleaded for mental anguish damages, at trial
she did not refer to or request any amount for mental anguish damages.  Thus,
Pro-Tech=s challenge to the
sufficiency of the evidence to support mental anguish damages is without merit.








2.       Recovery
of Amounts Farmers Paid to Pro-Tech  

Pro-Tech=s second argument appears directed at
damages compensating Pierce for the sums she, through her insurer, paid to
Pro-Tech.  Pro-Tech argues, regardless of whether one applies a
benefit-of-the-bargain measure of damages or an out-of-pocket measure of damages,
Pierce failed to prove the value of the services she actually received.  See
Leyendecker & Assocs., Inc. v. Wechter, 683 S.W.2d 369, 373 (Tex. 1984)
(defining benefit-of-the-bargain and out-of-pocket damages in context of DTPA
case).  We disagree.

The trial court could have found that Pro-Tech=s services were of
zero value.  Pierce presented the following evidence supporting that
interpretation: (1) testimony and photographs showing that Pro-Tech left Pierce=s house virtually
empty of its contents, essentially gutted except for the wiring and some
sheetrock; (2) testimony that Pro-Tech had removed and not replaced the air
conditioner; (3) testimony that Pro-Tech had not provided Pierce with a
certificate showing the house had been cleared of mold, and when Pierce tried
to find someone else to rebuild, there were still biohazard signs on the house;
(4) testimony that Mays did not return Pierce=s key until July
2002; and (5) documentation of the results of an inspection done in July
2002, showing the house contained toxic mold as of that date.[20]








Pro-Tech, however, contends Pierce=s evidence is
legally insufficient because (1) Pierce did not provide competent evidence
that Pro-Tech had not performed remediation and Pierce failed to plead or prove
Pro-Tech had contracted to rebuild; (2) Pierce offered no evidence to
establish the reasonable value of the services Pro-Tech performed; and
(3) to the extent Pierce relied on completion costs, the amounts charged
by or paid to Pro-Tech constitutes no evidence of the reasonableness of those
costs.  Again, we disagree.  Regarding Pro-Tech=s first and second
points, we have construed the contract as requiring Pro-Tech to provide both
remediation and restoration.  Because Pro-Tech left Pierce=s house in the
condition that it did, the trial court could have reasonably found that any
work Pro-Tech may have performed was of zero value.  Regarding Pro-Tech=s third point,
there is nothing in Pierce=s argument to the trial court to suggest
she characterized reimbursement for the sums Farmers had paid Pro-Tech as completion costs. 

3.       Out-of-Pocket
Expenses  

Pro-Tech next complains about Pierce=s evidence of her
out-of-pocket expenses for moving her stored items to a second facility,
additional storage fees, an inspection report, and additional living expenses. 
Pierce presented her own testimony regarding her expenses for the first two
items, her testimony and a receipt for the third item, and testimony and
insurance documents showing what Farmers had paid for Pierce=s living expenses
during the period covered by her claim.








Pro-Tech challenges the legal sufficiency of this evidence
solely on the ground that Pierce purportedly did not establish that her
expenses were reasonable and necessary.  In support of this argument, Pro-Tech
cites Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc., 134
S.W.3d 195, 200B01 (Tex. 2004), which, in turn cites Dallas
Ry. Terminal Co. v. Gossett, 156 Tex. 252, 294 S.W.2d 377, 382B83 (1956).[21] 
In Mustang Pipeline, the Texas Supreme Court observed that Mustang=s expert Awas careful to
limit his opinion solely to what it cost [a second company] to complete the
contract, and not whether that contracted amount was a reasonable cost to build
a pipeline.@  Mustang Pipeline, 134 S.W.3d at 201.  The
court also pointed to evidence indicating that the amount may not have been
reasonable under the circumstances.  See id.  In Gossett, the
Texas Supreme Court observed that Athe amount of the
charges [was] the only evidence in the record which might throw any light on
the reasonable value of the services rendered.@  Gossett,
294 S.W.2d at 282.

Here, Pierce=s evidence
included not only testimony and documentation of her out-of-pocket expenses for
storage, inspection, and additional living expenses, but also evidence of what
Farmers had been willing to pay for similar categories of expenses. 
Additionally, Mays testified that the cost for packing and moving the contents
of Pierce=s home exceeded $12,000.00.  Thus, there is some
evidence of the reasonableness of Pierce=s out-of-pocket
expenses (i.e., $822.00 total for additional storage, $360.00 for moving
expenses, $875.00 for the July 2002 inspection, and $2,500.00 per month for
additional living expenses).[22]








4.       Damage to Personal Property  

Pro-Tech also challenges the legal sufficiency of Pierce=s evidence that
she incurred $8,226.00 in damages to her stored personal property. 
Specifically, Pro-Tech contends (1) although Pierce testified about the Afair value@ of the property,
she did not testify about the fair market value; (2) she did not tie her
estimate of value to the location where the damages occurred; and (3) she did
not distinguish between the damaged property and the destroyed property.

Because we have determined that the categories of actual
damages previously discussed are supported by sufficient evidence, and because
these categories of damages exceed the trial court=s award, we do not
reach this argument.

 We overrule Pro-Tech=s issue to the
extent it challenges the sufficiency of the evidence of actual damages.

5.       DTPA
Additional Damages and Attorneys= Fees  

Finally, Pro-Tech argues Pierce is not entitled additional
DTPA damages or the recovery of attorneys= fees.  As
discussed above, we reverse the part of the judgment awarding Pierce DTPA
damages; however, we have concluded there is sufficient evidence to support
Pierce=s
breach-of-contract claim and the award of actual damages for that claim.  Here,
Pierce may recover reasonable attorneys= fees for that
claim.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 38.001 (Vernon 1997) (stating person may recover reasonable
attorneys= fees in addition to the amount of valid claim if claim is for
an oral or written contract).  Pro-Tech does not challenge the reasonableness
of Pierce=s attorneys= fees, but only
Pierce=s entitlement to
them.  We overrule Pro-Tech=s issue to the extent it challenges the
award of attorneys= fees.








Conclusion

Having concluded Pierce=s allegations do
not rise above a breach-of-contract claim, we reverse the part of the judgment
awarding Pierce additional DTPA damages and render judgment that Pierce take
nothing on her DTPA claim.  Having concluded Pierce presented sufficient
evidence to establish her breach-of-contract claim and actual damages, we
affirm the remainder of the judgment awarding actual damages, attorneys= fees, and pre-
and post-judgment interest.

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered
and Opinion filed September 26, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Guzman.









[1]  See Tex.
Bus. & Com. Code Ann. ''
17.41B.63 (Vernon 2002 & Supp. 2006).





[2]  The rebuilding costs included such items as
painting, resetting the range and sink, and floor covering.  The remediation
costs included such items as an air scrubber, plastic bags for contaminated
materials, and hepa vacuuming.





[3]  Farmers=s
calculation of the Replacement Cost Value includes $850.00 for post-remediation
testing.





[4]  When Pierce contracted with Mays, she was married to
Michael Pierce.  During the events giving rise to this law-suit, Pierce was
divorced and received the house as part of the settlement.





[5]  According to a memo from Mays, he did not receive
the first two checks until February14, 2002, by which time Apack-out@
was complete and remediation was to begin the following week.  Pierce
subsequently received additional payments from Farmers for contents that were
damaged or could not be remediated.





[6]  At trial, Mays attempted to prove Pierce had not
taken steps to prevent the regrowth of mold.





[7]  In contrast, Pierce=s former husband identified the damaged or missing property represented
by the $8,226.00 total as property which was placed in Pro-Tech=s storage facility, rather than in the garage, and counsel=s statements were consistent with Mr. Pierce=s testimony.





[8]  Mays represented himself at the bench trial.  Traci
Mays answered but did not appear at trial.  Both parties, represented by
counsel, filed a motion for new trial. 





[9]  See Tex.
R. Civ. P. 329b(c).





[10]  The trial court signed the judgment on April 29,
2005.  Twenty-four days later, on May 23, 2005, Pro-Tech filed a request for
findings of fact and conclusions of law.  A party must file its request for
findings of fact and conclusions of law within twenty days after the judgment
is signed.  Tex. R. Civ. P. 296. 
Thus, Pro-Tech=s request was untimely. 





[11]  After answering, Traci did not appear.  AA post‑answer >default= constitutes neither an abandonment of defendant=s answer nor an implied confession of any issues thus
joined by the defendant=s answer.  Judgment cannot be entered on the pleadings,
but the plaintiff in such a case must offer evidence and prove his case as in a
judgment upon a trial.@  Stoner v. Thompson, 578 S.W.2d 679, 682 (Tex.
1979).  In such a situation, the appellate court reviews challenges to the
legal and factual sufficiency of the evidence under the familiar standards of
review.  See Wallace v. Ramon, 82 S.W.3d 501, 503 (Tex. App.CSan Antonio 2002, no pet.).





[12]  Ortiz v. Collins, No. 14‑04‑01156‑CV,
CS.W.3dC, 2006 WL
2382255, at *7 (Tex. App.CHouston [14th Dist.] July 6, 2006, no pet. h.) (AA violation of the >laundry
list= contained in section 17.46(b) of the DTPA is distinct
from a claim for unconscionable conduct under section 17.50(a)(3).@).   





[13]  Teague v. Bandy, 793 S.W.2d 50, 54 (Tex. App.CAustin 1990, writ denied). 





[14]  According to Pierce, Mays told her not to pack, but
to leave seven changes of clothes by the door, and assured Pierce that the
clothing would be remediated and turned over to her.  





[15]  In D.S.A., Inc. v. Hillsboro Independent School
District, the Texas Supreme Court reasoned, AThe Formosa opinion=s
rejection of the independent injury requirement in fraudulent inducement claims
does not extend to claims for negligent misrepresentation.@  973 S.W.2d 662, 663 (Tex. 1998).  In Haase v.
Glazner, the supreme court rejected the plaintiff=s argument that Atort
damages for fraud can be recovered even where the plaintiff suffers only
economic loss related to the contract=s
subject matter.@  62 S.W.3d 795, 798 (Tex. 2001).  Thus, we conclude
the Formosa court=s rejection of the independent injury rule is limited
to fraudulent inducement claims and does not extend to fraud generally.  See
Heil Co. v. Polar Corp., 191 S.W.3d 805, 816B17 (Tex. App.CFort Worth 2006, pet. filed) (citing D.S.A. and
Haase and declining to extend Formosa analysis to fraud claim).





[16]  Although Pro-Tech casts its breach-of-contract
argument in terms of Ano evidence, or alternatively factually insufficient
evidence,@ it develops only Ano
evidence@ arguments.





[17]  According to the results of a test in July 2002, there was still mold
in the house as of that date.  Mays disputes the reliability and relevance of
this test as evidence of whether he had completed remediation when he left in
March 2002.





[18]  In addition, Pro-Tech=s actions in leaving biohazard signs on the house are also some
evidence that the mold was not remediated.  Moreover, when Pro-Tech returned
Pierce=s house key in July 2002, the house still contained
mold.





[19]  Pro-Tech does not contend the issue was tried by
consent, nor do we find this to be the case.





[20]  Because the trial court awarded Pierce $10,726.00 less than she requested for her breach-of-contract/DTPA
damages, the trial court could have found that this amount represented (a) the
damages Pierce failed to prove, (b) the value of Pro-Tech=s services, or (c) some combination of the two.  For
example, it is undisputed that Pro-Tech was paid $29,121.50 for services it
provided to Pierce.  According to Mays, these services consisted of (a) packing
and storing some of the contents of Pierce=s
home, (b) remediating mold in the home=s
structure, and (c) performing a post-remediation clearance test.  Additional
evidence supported Mays=s testimony that Pro-Tech packed and moved some of the
contents of Pierce=s home; however, Pro-Tech offered only Mays=s testimony to show that any remediation was performed
or that post-remediation testing was conducted.  As the finder of fact, the
trial court was free to disbelieve this testimony and to conclude that Pro-Tech
was not entitled to be paid for services that were not performed.  Although
Mays testified that the cost of packing and moving the contents of Pierce=s home was more than $12,000.00, Pierce testified that
Pro-Tech caused damage or destruction to her property totaling $8,226.00. 
Thus, the trial court could have concluded that the value of Pro-Tech=s services was less than $4,000.00 and reduced the
amount of Pierce=s recovery accordingly.  The trial court might also
have disbelieved Pierce=s testimony concerning damaged property but believed
Pierce=s testimony indicating that the value of packing and
moving the contents of Pierce=s home was only
$360.00Ci.e., the
amount of moving expenses Pierce testified she incurred in moving the contents
a second time.  However, we need not recreate the fact-finder=s calculations in order to determine whether the
amount of actual damages awarded was within the range of evidence presented at
trial.  See Westgate, Ltd. v. State, 843 S.W.2d 448, 457 (Tex. 1992)
(noting that a jury=s award of damages within the range of evidence will
stand if damages were submitted in a broad-form question in which damages are
not itemized).





[21]  Pro-Tech also cites Coker v. Burghardt, 833 S.W.2d 306 (Tex. App.CDallas 1992, writ denied).  The
issue in Coker was whether the trial court abused its discretion in
admitting an owner=s testimony about the cost of
repairing his car.  See id. at 310B11.  The appellate court did not consider Burghardt=s contention that the DTPA did not require he show the
car repair costs were reasonable.  See id. at 311 n.4.





[22]  Pro-Tech refers to Mays=s testimony that Pierce Awas partially moved from the house in 12->01 when we signed the contract,@
but does not directly challenge the evidence regarding the number of months for
which Pierce claims additional living expense damages.  Instead, Pro-Tech=s challenge appears to be directed at the monthly
charges Pierce alleged:

 

None
of the expenses sought by Appellee were established as being reasonable and
necessary by expert testimony, or by affidavits from the respective custodians
of records under Tex. Civ.  Prac. & Rem. Code ' 18.0001 et sec.  Additionally, appellee failed to
establish that she had personal knowledge of, or familiarized herself with, the
reasonable charges for the expenses in the county where the same were incurred.